DINGLEY and others *v.* OLER and others.

(*Circuit Court, D. Maine.* September Term, 1881.)

1. CONTRACTS—RENUNCIATION OF—ACTION.

In contracts for services, for marriage, for deliveries of merchandise, if the principal, before the time for performance arrives, renounces the contract an immediate action will lie.

2. SAME—CONTRACT TO DELIVER ICE.

Where defendants contracted to deliver a quantity of ice at 50 cents per ton during the season, " while the river is open," and in consequence of the price of ice during the season rising to five dollars per ton they unqualifiedly refused to ship the ice that season, it was *held* that an action may be maintained, though brought before the close of the season.

3. SAME—DAMAGES.

In such action the measure of damages is the value of the ice, to be estimated at what plaintiffs lost.

LOWELL, C. J. This case was heard by Judge Fox and me, upon evidence taken at the jury trial, the decision of the court being substituted for that of the jury by stipulation. We had consulted upon the case before Judge Fox's lamented death, and the result which I shall state was arrived at by both of us. I find the facts to be:

That late in the season of 1879 the plaintiffs, finding themselves in possession of a large quantity of ice undisposed of, and which threatened to be a total loss, pressed the defendants to buy some or all of it. Both parties were dealers in ice, cutting it upon the Kennebec river, and shipping it thence during the season; that is, while the river is open. The offers of the plaintiffs were rejected, but the defendants, by their letter of sixth September, 1879, made a counter offer to take a cargo and "return the same to you next year from our houses." The plaintiffs, by their letter of September, 1879, accepted this offer, and several cargoes were delivered upon the same terms. The total delivery was 3,245 25-100 tons. In July, 1880, one of the plaintiffs spoke to one of the defendants about delivering the ice, and he replied that he did not know about that—delivering ice when it was worth five dollars a ton, which they had taken when it was worth 50 cents a ton; but he promised to write an answer. July 7, 1880, the defendants wrote, repeating their objections, and saying, among other things: "We must, therefore, decline to ship the ice for you this season, and claim as our right to pay you for the ice in cash, at the price you offered other parties here, (that is, 50 cents,) or give you ice when the market reaches that point." The plaintiffs, July 10, 1880, wrote that they had a right to the ice, and had sold it in expectation of its delivery; to which the defendants answered, July 15, 1880, reciting the circumstances of the case and the hardship of such a demand, and again denying the obligation. The letter contains this sentence: "We cannot, therefore, comply with your request to deliver you the ice claimed, and respectfully submit that you ought not to ask this of us," etc., asking for a reply or a personal interview. Neither

appears to have been given, and this action was brought July 21, 1880. The letters above mentioned and the evidence concerning the oral demand or request are made part of this statement. I further find that ice was worth five dollars a ton in July, 1880, and fell, later in the season, to two dollars a ton.

Upon these facts I hold that there was a contract executed by the plaintiffs and to be executed by the defendants, who were bound to deliver 3,245 25-100 tons of ice from their houses on the Kennebec river during the year 1880; that the year means the shipping season,—as, indeed, I understand the correspondence to admit,—and that the defendants had the whole season, if they chose to demand it, in which to make delivery.

The questions are, whether the plaintiffs had a cause of action in July, and if so, what is the measure of damages?

It seems to me that the letters of the seventh and fifteenth of July contained an unequivocal refusal to deliver any ice during the season. The former letter, to be sure, speaks of shipping if ice should fall to the very low price of 50 cents, but this was under a claim of right not to ship unlesss it did fall to that point. The second letter says nothing of this qualification, if such it can be called. That letter does speak of further interviews or correspondence, but I regard this rather as looking to a conferrence and compromise, or possible understanding to be arrived at, than a qualification of the explicit refusal to ship ice that season.

The defendants having unqualifiedly refused to ship the ice, this action may be maintained, though brought before the close of the season, if the doctrine of *Hochster* v. *De Latour*, 2 Ell. & Bl. 678, is to be followed. That doctrine is that in contracts for services, for marriage, for deliveries of merchandise, if the principal, before the time for performance arrives, renounces the contract, an immediate action will lie. *Frost* v. *Knight*, L. R. 7 Ex. 111; *Roper* v. *Johnson*, L. R. 8 C. P. 167; *Crabtree* v. *Messersmith*, 19 Iowa, 179; *Holloway* v. *Griffith*, 32 Iowa, 409; *Fox* v. *Kitton*, 19 Ill. 519; *Burtis* v. *Thompson*, 42 N. Y. 246; *Howard* v. *Daley*, 61 N. Y. 362. These cases seem to me to be founded in good sense, and to rest on strong grounds of convenience, however difficult it may be to reconcile them with the strictest logic.

An able argument has been made against this doctrine by a jurist whose comparatively early death was a great loss to the cause of jurisprudence. *Daniels* v. *Newton*, 114 Mass. 530. I appreciate Judge Wells' argument, but he makes an admission which very much impairs its force. He says, on page 533:

"A renunciation of the agreement, by declarations or inconsistent conduct, before the time of performance, may give cause for treating it as rescinded, and excuse the other party from making ready for performance on his part, or relieve him from the necessity of offering performance in order to enforce his rights. It may destroy all right of the party so disavowing its obligations to assert rights under it afterwards, if the other party has acted upon such disavowal."

In other words, the promisee may treat the contract as rescinded and act accordingly, in every particular, except bringing an action. If the contract is rescinded wrongly by one party, I do not see why the other may not have an immediate action for the wrongful rescission, whether it be called a breach of the contract or something else. The learned judge certainly makes a strong point when he says (page 532) that this rule has never been applied to commercial paper, and that it may be fairly tested by so applying it. I think it highly probable that a notice by a promisor to the holder of his negotiable note, payable on a day certain, that he shall not pay it, would be treated as a mere friendly warning to be prepared for the emergency. It would be difficult to apply the rule, or to find any damages, in a case of the extreme simplicity and singleness of that supposed. But if the promisor had an election to pay at any time before a certain day, and notified his renunciation before that day, would not his election be gone? This case somewhat resembles that. The defendant might deliver the ice at any reasonable time and on reasonable notice within the season. When asked about it they might have delivered at once, or have fixed a future day, or have declined to appoint a day at present. They did neither of these things; but said that they should fix no day, and should deliver no ice at any time. It seems to me that they ought not to be permitted to say that the renunciation was mere talk, and that the time had not come when they could do what they undertook to do; that is, reject and renounce the contract.

It does not follow that the damages are to be reckoned by the price of ice in July. What the plaintiffs lost was 3,000 tons at some time during the season. We should infer, in favor of the defendants, that they would have been shrewd enough and well informed enough to deliver when the price had fallen. It went down, after July, to two dollars a ton, and the damages must be reckoned at this rate. *Ex parte Llansamlet Tin Plate Co.* L. R. 16 Eq. 155; *Brown* v. *Muller*, L. R. 7 Ex. 319; *Roper* v. *Johnson*, L. R. 8 C. P. 167. Judge Fox called

my attention to these cases, and they seemed to us to be well decided.

After the parties have had opportunity to except to this decision, if they should be so advised, judgment is to be entered at the rate of two dollars a ton for 3,245 25-100 tons, with interest from the date of the writ.