HORST et al. v. ROEHM.

(Circuit Court, E. D. Pennsylvania. January 27, 1898.)

No. 42.

1. CONTRACT WITH PARTNERSHIP—EFFECT OF DISSOLUTION.

Upon the dissolution of a partnership, an assignment by one member to the others of his interest in a partnership contract does not release the other party to the contract from the performance thereof.

2. CONTRACTS—WHEN RIGHTS ARISING OUT OF CONTRACTS ARE ASSIGNABLE.

While rights arising out of a contract cannot be transferred if they are coupled with liabilities, or if they involve a relation of personal confidence such that the party whose agreement conferred those rights must have intended them to be exercised only by him in whom he actually confided. it must appear, in order to preclude the transfer of rights arising out of a contract, that the relation of personal confidence is involved in the nature of the rights themselves.

3. CONTRACTS—RENUNCIATION OF—ACTION.

Where a contracting party gives notice of his intention not to comply with the obligation of his contract, the other party may accept this as an anticipatory breach, and sue for damages before the time for performance arrives.

4. SAME—DAMAGES.

In such action, the measure of damages is the difference between the price named in the contract and the price at which it is shown plaintiffs could have made subcontracts for the delivery of the goods, according to their agreement with the defendant.

In pursuance of stipulation filed under section 649 of the Revised Statutes, this case was tried by the court without the intervention of a jury.

Finding of Facts.

On August 25, 1893, the firm of Horst Bros., composed of Paul R. G. Horst, E. Clemens Horst, and Louis A. Horst, the legal plaintiffs, entered into four

written contracts with John Roehm, the defendant, of which the following are copies:

"Hop Contract.

"Memorandum of agreement made and entered into by and between Horst Bros., doing business in the city of New York, parties of the first part, and John Roehm, party of the second part, witnesseth that the said parties of the first part agree to sell and deliver to the parties of the second part, and that the parties of the second part agree to purchase, pay for, and receive from the parties of the first part, one hundred (100) bales, prime Pacific coast hops, of the crop of 1896. Three and one-half pounds tare to be deducted on each bale. Said hops to be delivered ex dock or store, New York City, and to be paid for in net cash, ten days from date of arrival, at the rate of twenty-two (22) cents per pound. Time of shipment: 20 bales each month, March, April, May, June, and July, except as hereafter provided. If at any time a difference of opinion shall exist regarding the quality or condition of any hops submitted or tendered under this agreement, each party shall select an arbitrator, to whom the question of the quality and condition shall be submitted, and, in case of their disagreement, a third arbitrator shall be selected by the two thus chosen, and the decision of the majority of the three shall be final; and, in case the decision shall be that the hops tendered are not equal to the quality above called for, the parties of the first part shall, within 30 days after receipt of written notice of such decision, submit samples or tender delivery, to the parties of the second part, other hops, in fulfillment of this agreement, and parties of the second part agree to receive same. In witness whereof the said parties have hereunto set their hands, Phila., this 25th day of August, 1893.

"Horst Bros.
"John Roehm."

"Hop Contract.

"Memorandum of agreement made and entered into by and between Horst Bros., doing business in the city of New York, parties of the first part, and John Roehm, parties of the second part, witnesses that the said parties of the first part agree to sell and deliver to the parties of the second part, and that the parties of the second part agree to purchase, pay for, and receive from the party of the first part, one hundred (100) bales, prime Pacific coast hops, of the crop of 1896. Three and one-half pounds tare to be deducted on each bale. Said hops to be delivered ex dock or store, New York City, and to be paid for in net cash, ten days from date of arrival, at the rate of twenty-two (22) cents per pound. Time of shipment: 20 bales each month, October, November, December, January, and February, except as hereafter provided. If at any time a difference of opinion shall exist regarding the quality or condition of any hops submitted under this agreement, each party shall select an arbitrator, to whom the question of the quality and condition shall be submitted, and, in case of their disagreement, a third arbitrator shall be selected by the two thus chosen, and the decision of a majority of the three shall be final; and, in case the decision shall be that the hops tendered are not equal to the quality above called for, the parties of the first part shall, within 30 days after receipt of written notice of such decision, submit samples or tender delivery, to the parties of the second part, other hops, in fulfillment of this agreement, and parties of the second part agree to receive the same. In witness whereof the said parties have hereunto set their hands, Philadelphia, this 25th day of August, 1893.

Horst Bros.
"John Roehm."

"Hop Contract.

"Memorandum of agreement made and entered into by and between Horst Bros., doing business in the city of New York, parties of the first part, and John Roehm, parties of the second part, witnesses that the said parties of the first part agree to sell and deliver to the parties of the second part, and that the parties of the second part agree to purchase, pay for, and receive from the party of the first part, one hundred (100) bales of prime Pacific coast hops, of the crop of 1897. Three and one-half pounds tare to be deducted on each bale. Said hops to be delivered ex dock or store, New York City, and to be paid for in net cash ten days from date of arrival, at the rate of twenty-two

(22) cents per pound. Time of shipment: 20 bales each month, March, April, May, June, and July, except as hereafter provided. If at any time a difference of opinion shall exist regarding the quality or condition of any hops submitted or tendered under this agreement, each party shall select an arbitrator, to whom the question of the quality and condition shall be submitted, and, in case of their disagreement, a third arbitrator shall be selected by the two thus chosen, and the decision of a majority of the three shall be final; and, in case the decision shall be that the hops tendered are not equal to the quality above called for, the parties of the first part shall, within 30 days after receipt of written notice of such decision, submit samples or tender delivery, to the parties of the second part, other hops, in fulfillment of this agreement, and parties of the second part agree to receive same. In witness whereof the said parties have hereunto set their hands, Philadelphia, this 25th day of August, 1893. Horst Bros.

"John Roehm."

"Hop Contract.

"Memorandum of agreement made and entered into by and between Horst Bros., doing business in the city of New York, parties of the first part, and John Roehm, parties of the second part, witnesses that the said parties of the first part agree to sell and deliver to the parties of the second part, and that the parties of the second part agree to purchase, pay for, and receive from the party of the first part, one hundred (100) bales, prime Pacific coast hops, of the crop of 1897. Three and one-half pounds tare to be deducted on each bale. Said hops to be delivered ex dock or store, New York City, and to be paid for in net cash, ten days from date of arrival, at the rate of twenty-two (22) cents per pound. Time of shipment: 20 bales each month, October, November, December, January, and February, except as hereafter provided. If at any time a difference of opinion shall exist regarding the quality or condition of any hops submitted or tendered under this agreement, each party shall select an arbitrator, to whom the question of the quality and condition shall be submitted, and, in case of their disagreement, a third arbitrator shall be selected by the two thus chosen, and the decision of a majority of the three shall be final; and, in case the decision shall be that the hops tendered are not equal to the quality above called for, the parties of the first part shall, within 30 days after receipt of written notice of such decision, submit samples or tender delivery, to the parties of the second part, other hops, in fulfillment of this agreement, and parties of the second part agree to receive same. In witness whereof the said parties have hereunto set their hands, Philadelphia, this 25th day of August, 1893. Horst Bros.

"John Roehm."

The months named in each of these contracts, respectively, as "time of shipment," must, under the custom of the trade, be understood as meaning the months so named which would follow next after the summer months of the year of the crop referred to in the particular contract. On June 23, 1896, the firm of Horst Bros. was dissolved, and Paul R. G. Horst assigned to his co-partners, E. Clemens Horst and Louis A. Horst, the use plaintiffs, all the interest of him, the said Paul R. G. Horst, in the said contracts. Upon June 23, 1896, a notice, of which the following is a copy, was addressed to and received by the defendant:

"June 23, 1896.

"Dear Sir: We beg to inform you that the partnership of Horst Brothers has been this day dissolved.

"Respectfully yours, Horst Brothers."

To this, under date of June 27, 1896, the defendant replied, saying: "* * * I suppose that your reason for giving me the notice is on account of the contracts which I had with your late firm, * * * which, of course, you cannot fulfill. I therefore consider the contracts annulled, and will make other arrangements for the purchase of the hops I may need, and you may consider this as release from liability on your part to comply with the contracts." In answer to this, Horst Bros., in liquidation, addressed a letter to the defendant, which he duly received, in which it was said that he had misconstrued

the notice of dissolution sent out to the trade; that its meaning was that no new contracts would be made and no new business undertaken by the firm of Horst Bros.; and in which it was further stated that, "so far as the firm or business is concerned, the firm will discharge its obligations, and will try to collect its claims. It does not ask for any release or discharge, and will punctually live up to all the contracts which it has made with you." This communication was not replied to. In October, 1896, the first shipment of 20 bales of hops under the contracts was made, and the invoice and bill of lading covering that shipment were sent to the defendant, who on October 24, 1896, by telegram and letter, acknowledged receipt of the bill of lading and bill of particulars, but, upon the ground set up in his letter of June 27, 1896, declined to receive the hops. At the time of the defendant's refusal to receive the shipment above mentioned the plaintiffs could have made subcontracts for forward delivery, according to the contracts in suit, at the price of nine cents per pound for "prime Pacific coast hops, of the crop of 1896," and of eleven cents per pound for like hops, of the crop of 1897; and the differences between the prices fixed by the contracts sued on and those above stated, together with interest on the sum of such differences, from October 24, 1896, to this date, are as follows:

| | |
|---|---:|
| Difference between contract price, 22 cents per pound, and 9 cents per pound, on 200 bales, 39,200 pounds. @ 13 cents per pound ............................................................ | $ 5,096 00 |
| Difference between contract price, 22 cents per pound, and 11 cents per pound, on 200 bales, 39,200 pounds, @ 11 cents per pound ............................................................ | 4,312 00 |
| | $ 9,408 00 |
| Interest from October 24, 1896, to January 27, 1895.......... | 710 30 |
| | $10,118 30 |

Frank P. Prichard and John A. Garver, for plaintiffs.
Samuel Dickson and R. O. Moon, for defendant.

DALLAS, Circuit Judge. 1. The position taken by the defendant in his letter of June 27, 1896, and again upon the trial, is untenable. His contracts with Horst Bros. were not annulled by the dissolution of that firm, nor by the assignment of one partner's interest therein to his co-partners. To hold otherwise, it would be necessary to maintain that any dissolution of a commercial partnership, accompanied by a division of its executory contracts, would work their extinguishment, and the statement of such a proposition is, I think, its sufficient refutation. Of course, the other contracting party may, notwithstanding dissolution and regardless of the terms thereof, hold all the partners upon a partnership contract; and, on the other hand, the contractual rights of the latter continue to be enforceable, though only by action (as in this instance), in the name of all, to the use of such of them as, by agreement among themselves, may be entitled to the proceeds of recovery. The judgment in Bank v. Hall, 101 U. S. 43, is not opposed to this view of the law. The conclusion there reached was based, primarily and mainly, upon the actual nonexistence of an asserted contract, and what, at the close of the opinion, was said respecting "the change of the firm," who, "if, in fact, there were * * * a contract," had been one of the parties to it, was unnecessary to the decision. But, aside from this, the facts of that case distinguish it from the present one, and the later decisions of the same court, hereafter cited, require that it shall be distin-

guished. Without pausing to point out the details of their dissimilarity, it will suffice to observe that, in the case referred to, the substance of the ruling was that a new party could not be imported into the contract there asserted, whereas, in the case now under consideration, as already said, the parties are still, both as to liability and right, precisely the same as those by whom the contract was originally made. "Rights arising out of a contract cannot be transferred if they are coupled with liabilities, or if they involve a relation of personal confidence such that the party whose agreement conferred those rights must have intended them to be exercised only by him in whom he actually confided." This statement of the law was adopted by the supreme court in Arkansas Val. Smelting Co. v. Belden Min. Co., 127 U. S. 379, 8 Sup. Ct. 1308. No statement more favorable to the defendant could be made, but the rule it embodies cannot avail him. The liability of all the members of the plaintiff firm continued after dissolution to be precisely what it had been before, and there is nothing whatever in the contracts to indicate that they "involve a relation of personal confidence" between the defendant and Paul R. G. Horst, the person who assigned to his copartners. It was on the allegation that such confidence existed in fact that the defendant based his defense upon this point; and in support of this allegation the defendant testified, in general terms, to the effect that he had been influenced, or perhaps induced, to contract with the plaintiffs, by his reliance upon the judgment and fair dealing of Paul R. G. Horst, but the admission of this testimony was duly objected to by plaintiffs' counsel, and was received subject to that objection, and with reservation of judgment upon it. I have no doubt that it was irrelevant, and consequently I have excluded it from consideration, and have made no finding of fact with reference to it. As already indicated, I am of the opinion that "personal confidence," to preclude the transfer of rights arising out of contract, must be involved in the nature of the rights themselves, so that the party whose agreement conferred those rights must have intended them to be exercised only by him in whom he actually confided. If, from the nature of the subject, personal confidence be not implied, the fact, if conceded, that the personal participation of one of several contractors in carrying out the contract had been actually relied upon would be of no consequence whatever. Delaware Co. Com'rs v. Diebold Safe & Lock Co., 133 U. S. 473–488, 10 Sup. Ct. 399.

2. This case is within the rule laid down in Hochster v. De La Tour, 2 El. & Bl. 678, and the other English cases cited in Dingley v. Oler, 117 U. S. 502, 6 Sup. Ct. 850. In the case last mentioned the supreme court, after remarking that the rule referred to had been followed by the courts of several of the states, but had been denied by the supreme judicial court of Massachusetts, declined to decide whether or not it should be maintained "as applicable to the class of cases" to which the one then before it belonged. The facts of that case were somewhat peculiar, and it is not quite clear that the court's declination to pass upon the applicability of the doctrine of Hochster v. De La Tour to it implied a doubt as to the propriety of its application in a case so plainly within that doctrine as is that now

presented.    But, assuming the broad question to have been left open by the supreme court, I think that upon the preponderance of authority, as well as upon sound reasoning, it must be held that a right of action had accrued to the plaintiffs, with respect to all the contracts in question, at the time this suit was brought.    There can be no doubt that this would be so under the law of England, and a diversity in the law, as administered on the two sides of the Atlantic, concerning the consequence to result from an absolute repudiation by one party of a commercial contract of this kind, is greatly to be deprecated.    Norrington v. Wright, 115 U. S. 206, 6 Sup. Ct. 12.    In my opinion, the argument of the court in Daniels v. Newton, 114 Mass. 530, was well and sufficiently answered by Judge Lowell in Ding'ey v. Oler, 11 Fed. 372.    What is there said need not be repeated at length, but I may remark that I concur with that learned judge in thinking that the several state decisions cited by him (to which others might be added), as in conflict with Daniels v. Newton, are "founded in good sense, and rest on strong grounds of convenience, however difficult it may be to reconcile them with the strictest logic."    Since the decision of Dingley v. Oler, the circuit court of appeals for the Sixth circuit has, in two cases (in both of which Dingley v. Oler was cited), stated the law to be that, "where a contracting party gives notice of his intention not to comply with the obligation of his contract, the other party may accept this as an anticipatory breach of the contract, and sue for damages, without waiting until the time mentioned for the completion and fulfillment of the contract by its terms.    *   *   *"    Brewing Co. v. Bullock, 8 C. C. A. 14, 59 Fed. 87; Lumber Co. v. Alley, 43 U. S. App. 175, 19 C. C. A. 599, and 73 Fed. 603.    In the absence of any controlling solution of the question by the supreme court, I do not hesitate to adopt this statement, supported, as it is, by the judgment of Judge Lowell, in Dingley v. Oler, as well as by the English authorities, and by the judgments of the courts of several of the states.

3. On behalf of the defendant it has been contended that "assuming that the action can be maintained, the measure of damages must be restricted to the loss, if any, upon the deliveries which should have been made prior to the bringing of the suit."    I cannot yield assent to this proposition.    It conflicts with the principle that the measure of damages in every case must be such as, when applied, will result in ascertainment of the sum necessary to make good the entire loss sustained by reason of the act or default which constitutes the cause of action.    The plaintiffs were, by the act of the defendant, prevented from making the deliveries called for by the contracts. It is this anticipatory denial and obstruction of the right to deliver, not a tender and refusal, which is the ground of suit, and the measure which might otherwise have been applicable is therefore wholly inappropriate.    The law of damages is not comprised in a set of arbitrary rules.    Where a contract has been broken or a wrong has been committed, compensation must be made.    This is the underlying principle, and any standard or measure which does not accord with it cannot be applied, but some other, which is fairly compensatory to the one party, and not unjust to the other, must be resorted

to. Carroll-Porter Boiler & Tank Co. v. Columbus Mach. Co., 3 U. S. App. 633, 5 C. C. A. 190, and 55 Fed. 451. In this case the plaintiffs have shown that they could have made subcontracts for the delivery of the hops, according to their contracts with the defendant; and, whatever might be the rule in a case in which this could not be shown, I am of opinion that where, as in this instance, that fact appears, the difference between the price at which such subcontracts could have been obtained and the price named in the contracts between the parties is manifestly the amount of the loss actually suffered, and therefore must be the correct measure of the damages recoverable. Hinckley v. Steel Co., 121. U. S. 264, 7 Sup. Ct. 875; Mining Co. v. Humble, 153 U. S. 549, 14 Sup. Ct. 876. There was some variance in the evidence respecting the price at which subcontracts could have been obtained. The evidence on behalf of the plaintiffs was that on October 24, 1896, the price for the crop of 1896 would have been $7\frac{1}{2}$ cents per pound, and for the crop of 1897 $9\frac{1}{2}$ cents per pound. But the evidence for the defendant tended to show, as to each crop, that the price would have been greater. In my findings of fact I have not accepted the extreme position of either side. I do not think I would have been justified in relying wholly upon any part of the evidence, and my conclusion was arrived at after carefully considering the whole of it, and giving to every portion of it the weight to which I believed it to be entitled. I have had in mind the right of the plaintiffs to compensation, but have also been especially solicitous to avoid doing injustice to the defendant. It is ordered that judgment be entered, as of this date, in favor of the plaintiffs, and against the defendant, in the sum of $10,118.30.