Campbell, Chief Justice,
reviewing the facts found to be established, delivered the opinion of the court:
The plaintiff made a contract with the United States, dated May 24, 1905, to deliver 20,000 barrels of cement, half of it to be delivered and used at Grande Island and the other half at Corregidor Island. The prices for the cement delivered in accordance with the specifications are stated in the contract. Section 50 of the specifications provides that “ the cement will be accepted in lots of from 1,000 barrels to 5,000 barrels at each place.” The first delivery at Corregidor was to be made in October, 1905, and at Grande Island in November, 1905, and it was provided that if delivered in lots of 5,000 barrels the second delivery would be made for each place four months after the first. If deliveries were in lots of less than 5,000 barrels, the second delivery would be made as many months after the first as there were thousands *232 of barrels in the first lot and thereafter at the rate of 1,500 barrels for each place. In making his bid the plaintiff indicated a desire to deliver the cement in lots of 2,000 barrels at a time. The first delivery requested by defendants was made in October, 1905, of 1,000 barrels. It was accepted and paid for by defendants. No other cement was ordered until March 6, 1906, when plaintiff was directed to deliver 2,000 barrels at Corregidor. It appears that the Government’s delay in ordering cement was occasioned by the facts that they did not receive the lumber to make the necessary forms, the vessel carrying the same having been lost at sea, and on account of climatic conditions the cement could not be safely stored at said islands. The plaintiff was at all times ready to make deliveries according to his contract and offered to do so. He transported and tendered the 2,000 barrels ordered in March, but the defendants could receive only 1,740 barrels of it for lack of barge space, and 260 barrels were accordingly left on plaintiff’s hands and were by him returned to Hongkong at the expense of freight and handling. The 1,740 barrels of cement, less 153 barrels which had been used, were subsequently rejected and replaced as hereinafter stated. No other shipments were ordered. The period during which the plaintiff was to make deliveries at the two places expired in April and May, 1906. He was not at fault, and the defendants were at fault in their failure to order and accept the cement. They breached the contract.
1. The item of $2,364.62 is claimed as damages representing a loss to plaintiff because of the breach of the contract, he claiming that if he had been permitted to perform he would have made a profit in the transaction to the amount of said sum.
In a case like this the plaintiff is entitled to recover the difference between what it would have cost him to perform and the contract price, if the latter exceeds the former. The general rule as to the measure of damages where a vendor sues on account of the purchaser’s failure to accept the goods is that he may recover the difference between the contract price and the market price at the time and place of delivery. But this rule is not a rigid one to the exclusion of any other *233 method of ascertaining the amount of the damages, and must be accommodated to exigencies of the particular case. Salem Iron Co. v. Lake Superior Mines, 112 Fed., 239; Southern Cotton Oil Co. v. Heflin, 99 Fed., 339, 347. It may frequently happen that there is no open market at the place of delivery, and while in such case it may be competent to show the market value at some near-by place or by other circumstances to determine the amount of damages, the fact that such proof is allowable but illustrates the view that the rules of law as to the measure of damages are not intended to deprive a plaintiff of a remedy when he may be unable to show the market value of the goods at a particular time or place. Eesort may be had to other forms of proof. The purpose of the law is to recognize his right to recover for a breach of the contract an amount that will reasonably and properly compensate him for his loss occasioned as a direct and proximate consequence of the breach. What the plaintiff lost was the equivalent of what his gain would have been if permitted to perform the contract. In other words, he lost the profits which a full performance would have brought to him. It is inferable from the facts that defendants had notice'that plaintiff expected to purchase cement with which to comply with his proposal and contract. He resided at Manila and was proposing to furnish a brand of cement manufactured near Hongkong. Whether such notice may be inferred or not, the fact is that plaintiff, after his bid was accepted, made a contract with the manufacturer of the “ Emerald ” brand to furnish him the cement necessary to meet the requirements of his contract with defendants. His evidence shows that said manufacturer was a responsible party who would have furnished the cement to plaintiff at a price which would have enabled him to fulfill his contract with defendants and have earned a profit of 13.7 cents per barrel. The deliveries were to be made in installments and at two different places—some at Grande Island and some at Corregidor Island or on barges at Manila. It would be difficult if not impossible to show what the market value of the cement was at the several times and places at which deliveries were to be made. It is not shown and it would be un *234 reasonable to infer that the plaintiff had on hand during the contract period the full amount of 17,240 barrels of cement awaiting orders of the engineer officer to make deliveries. The contract did not contemplate that he would have or hold the cement at hand, but rather that as and when notified that shipments were wanted he would comply, and this seems to have been the course of dealing in the matter by the parties. He was at all times ready and willing to make deliveries accordingly.
The familiar rule above stated as to the measure of damages is not in such case as satisfactory as the one which would enable proof to be made of the actual loss suffered by plaintiff. To prove what he would have earned, it is competent for him to show that he had in good faith made a contract with a responsible manufacturer to furnish him the cement at a definite price which would have enabled him to make deliveries at a profit over and above what the cement and its delivery would have cost him, and having made that proof the difference between what he would have paid for the cement, including the cost to him of its delivery, and what he would have received for it “is manifestly the amount of the loss actually suffered, and therefore must be the correct measure of damages recoverable.” Horst v. Roehm,, 84 Fed., 565, 571; Roehm v. Horst, 178 U. S., 1, 21; Danforth v. Walker, 87 Vt., 239.
The contention of the defendants that plaintiff could have taken the cement under his contract with the manufacturer and sold it for more than he would have received from defendants because it had advanced in price is without merit in this case. There was no duty upon him under the circumstances to do that in order to relieve the defendants of the consequences of their own default. If he had the cement on hand at the time of the breach, its market value at the times and places of the contemplated deliveries might be looked to in fixing the amount of his damages, but the facts that cement had advanced in price during May, and that subsequently at a letting of another contract the bids were higher, do not show either that plaintiff had the cement on hand or what its market price was at the times and places *235 it was to have been delivered. The period fixed for deliveries at Grande Island expired in May without any cement having been ordered for that place; and at Corregidor Island the period expired in April with only 2,740 barrels having been ordered. The plaintiff is entitled to recover the said amount of the profits he would have earned, namely $2,364.62.
2. The item of $643.11 is not recoverable. The plaintiff under some arrangement with a broker in Hongkong, who was his former partner, and who had transferred his interest in the partnership to plaintiff, had agreed that in part consideration of that transfer the said party should receive a brokerage upon sales of cement made through the Hongkong office. But if the contract here sued upon had been fully performed by both parties the said brokerage, if he is liable for it under said arrangement, presumably would have been paid out of plaintiff’s profits. When, therefore, he is allowed all the profits he would have made it is apparent that he can still pay the brokerage out of his recovery.
3. The item of $260 is claimed because the defendants did not furnish barge space for all of the 2,000 barrels ordered by them and tendered at Corregidor Island in April, 1906, but left 260 barrels on plaintiff’s hands, and the same had to be reshipped at an expense of handling and freight, which plaintiff paid. He could have insisted reasonably that defendants accept said 260 barrels, and they having failed to do so they should bear the expense and he be reimbursed his reasonable outlay on account thereof, which amounts to $260.
4. The item of $1,660.92 represents the sum deducted by the Government from the contract price of the 1,587 barrels of cement delivered by plaintiff in July, 1906, to replace a similar amount of cement which had been rejected on May 31. The contract price of this cement was $3,163. The Government deducted said sum and paid plaintiff the difference of $1,502.08. It claims that the deduction was proper because it had purchased cement of equal amount to replace the rejected cement at an additional cost in price *236 to the amount of the deduction. We think that the deduction was not justified by the facts. The 1,587 barrels of cement were rejected on May 31 and plaintiff was asked to replace it. But considerable time was consumed in determining whether the rejection was proper. The cement had been delivered on April 4 and a definite conclusion to reject it was not announced until May 31. The plaintiff then requested that a new test be made when his representative could be present, and his request was granted. Upon its conclusion both parties agreed that the cement had not met the test, and it was accordingly delivered back to plaintiff. The Engineer officer then demanded that the plaintiff furnish cement to replace that which had been rejected, and the plaintiff having furnished the proper amount for that purpose it was accepted by the Engineer officer. Conceding that said officer would have had the right upon rejecting the cement and plaintiff’s failure to replace it to have bought cement under the provisions of the contract to make good plaintiff’s failure in that regard, it seems to us that his whole course was inconsistent with any such purpose. On the contrary, he called upon plaintiff to furnish the 1,587 barrels after the second test had been made as to the quality of the former shipment, and he had purchased 900 barrels of cement from another party before his demand was made upon plaintiff to replace the rejected cement. If he had purchased the 900 barrels and contracted for 1,100 barrels additional to take the place of that which was rejected, why would he demand that plaintiff furnish it and actually receive plaintiff’s shipment intended by the latter to replace his rejected shipment? The officer could not take the position that the contract authorized him to go into the market and purchase cement against plaintiff’s account and also that he could require plaintiff to replace his shipment. Conceding his right to do either of these things, he could not do both of them; and having elected to call upon plaintiff to replace the 1,587 barrels, and the latter having done so, the officer’s purchase of additional cement and the deduction of its additional cost from the amount due plaintiff for the cement designed to replace and accepted as re *237 placing the former shipment were not justified. The more reasonable view of the transaction is that the purchase of the 900 barrels of cement which appears to have been more or less urgent was because of the failure to receive the 2,000 barrels which the officer ordered from plaintiff on May 16 and which the latter had the right to refuse to ship because the contract period for shipments to Corregidor had expired. The additional 1,100 barrels purchased by said officer were to be delivered in August, much later than the plaintiff’s second shipment was delivered and accepted. We think the plaintiff is entitled to recover the contract price of the 1,587 barrels of cement without deduction; and having been paid in part he should be paid the balance, amounting to $1,660.92.
5. The plaintiff also claims a large sum on account of an alleged liability of the plaintiff to the manufacturers of the cement, from whom he was to procure it for delivery to defendants under his contract. The items of this claim are set forth in Finding XII, but the last two of them were abandoned in argument by his counsel. The items claimed are not proper elements of damage. The principle upon which he seeks to base a right of recovery for them (13 Cyc., 35) is sometimes applicable where a purchaser of goods notifies his vendor or a manufacturer of a subcontract, whereby the purchaser may suffer special additional loss if the manufacturer or vendor fail to deliver the goods. In other words, if the plaintiff here were suing his vendor, the manufacturer, and could show that the latter knew that plaintiff had an advantageous contract with defendants and agreed to deliver the goods to plaintiff in view of such subcontract, it may be that the plaintiff could show his losses under his subcontract with defendants as an element of his damages against the manufacturer. But in the instant case the conditions are reversed, and the vendor is suing the purchaser. The asserted principle is inapplicable. If plaintiff breached his contract with the manufacturer the latter’s damages have no connection with the plaintiff’s contract with defendants or the damages flowing therefrom. It would be manifestly inconsistent to hold that the plaintiff was ready and willing to *238 make deliveries to defendants and then further find that he could not comply with the terms of his purchase from the manufacturer under which alone deliveries would be possible. However, there is no sufficient proof of a liability of plaintiff to his said vendor or of losses by the latter.
We conclude, therefore, that he should be allowed to recover the said several sums aggregating $1,285.51, and for that sum judgment will be awarded the plaintiff against the defendants.
And it is so ordered.
Booth, Judge, and Barnet, Judge, concur.
Downet, Judge, took no part in the decision of this case.