## McELWEE v. BRIDGEPORT LAND & IMPROVEMENT CO.

### (Circuit Court of Appeals, Fifth Circuit. March 6, 1893.)

### No. 98.

1. APPEAL—HARMLESS ERROR—INSTRUCTIONS.

   If a charge directing a verdict for the defendant is justified, the refusal of the court to give certain special charges is of no consequence, and need not be considered by a reviewing court.

2. CONTRACTS—BREACH—REMEDIES.

   A party to a contract, who is prevented or excused from fully performing it by the conduct of the other party, may treat the contract as broken, and sue, at his election, either for damages and loss of profits, or for the value of services already performed, as upon a quantum meruit.

3. SAME—DAMAGES—LAND COMPANIES—BONUS FOR LOCATION OF FACTORY.

   A land company, in order to procure the erection of a mill near its land, contracted to pay a bonus to the manufacturer, a fixed sum to be paid when the latter was ready to begin work thereon, and the rest in installments as the work progressed. The first installment was promptly paid, but two others were earned and not paid, whereupon the manufacturer ceased work, and sued for damages for breach of contract. It appeared that his entire outlay and expenses were less than the first installment received, and there was no proof of loss of profits. *Held*, that he could recover nothing.

In Error to the Circuit Court of the United States for the Northern Division of the Northern District of Alabama.

Action by Frank B. McElwee against the Bridgeport Land & Improvement Company to recover damages for breach of a contract. The circuit court directed a verdict and gave judgment for defendant. Plaintiff brings error. Affirmed.

R. C. Brickell, F. L. Mansfield, and W. A. Gunter, (Burkett & Mansfield and Brickell, Semple & Gunter, on the brief,) for plaintiff in error.

George N. Messiter and David D. Shelby, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and TOULMIN, District Judge.

TOULMIN, District Judge. The plaintiff in error, who was the plaintiff below, entered into a contract with the defendant in error, a land company, to build and equip a cotton mill or factory, of a given capacity, on certain lots of land in Bridgeport, Ala., to be conveyed to him by the defendant, in consideration of $60,000, to be paid him by the defendant, as stipulated in the contract. The contract was made on the 3d day of May, 1890. It provided that the entire plant was to be completed as soon as practicable, and as rapidly as the defendant should perform its part of the contract by the payment of the respective sums of money, therein agreed to be paid by it. The stipulation in the contract as to the payment of the money by the defendant is in the following words and figures:

"The party of the second part further agrees and binds itself to the party of the first part that it will, in consideration of the foregoing agreement made by the party of the first part, and the benefits that will accrue to it from the building of said factory or mill, pay to the party of the first part

the sum of sixty thousand dollars ($60,000) in money, as follows, to wit:" Five thousand dollars ($5,000) when ready to go to work, five thousand dollars ($5,000) in thirty days thereafter, ten thousand dollars ($10,000) when the foundations of the buildings are completed, ten thousand dollars ($10,000) when main building is completed, fifteen thousand dollars ($15,000) on receipt of bill of lading for machinery, five thousand dollars ($5,000) on arrival of machinery, five thousand dollars ($5,000) when machinery is placed in the mill, and five thousand dollars ($5,000) when the machinery is ready to start and mill completed; but the party of the second part is to incur no further expense or liability in the matter of the erection of said cotton factory or plant except said 'sum; making in the aggregate sixty thousand dollars ($60,000) to be paid by the party of the second part."

There are other provisions in the contract, which, in our view of the case, are not necessary to be noticed.

The further undisputed facts are that the plaintiff was ready to go to work, and did begin work under the contract, on the 12th day of May, 1890, and that on that day the defendant made the first payment of $5,000, stipulated for; that the defendant did not in 30 days thereafter pay the second installment of $5,000, and did not pay the third installment of $10,000, stipulated and agreed to be paid when the foundations of the buildings were completed; that said foundations were completed by the 1st day of October, 1890, of which the defendant was fully informed; that on the 11th day of May, 1890, the defendant conveyed to the plaintiff the land mentioned in the contract, which land the plaintiff still owns; that the plaintiff received from the defendant more money than he expended in the work done under the contract, the total cost of the foundations of the buildings being about $3,200, and the amount paid by defendant to plaintiff being $5,000. On the 20th day of October, 1890, the defendant, in a letter to the plaintiff, stated that it was ready to go on with its part of the contract, and put up the money as fast as it could do so. On the 23d day of October, 1890, the plaintiff, replying to that letter, said:

"When you refused to make the payment of $5,000 at 30 days after the beginning of my work I slacked up. When you made your second default, and some of your people began to look for excuses to avoid their contract, I quit work. * * * If your people promptly pay me the $15,000 now overdue, and desire the house built this winter, I will proceed promptly with the work; but the payment of the $15,000 is a condition precedent to any work further on or conference touching the future of the mills."

To this letter the plaintiff received no reply, and no further work was done by him. On the 25th day of February, 1891, this suit was brought to recover for the breach of the contract, in that the defendant failed to pay to the plaintiff the second and third installments of $5,000 and $10,000, respectively, as by the contract the defendant stipulated and agreed to do.

There are many assignments of error, most of which are on rulings upon demurrers to defendant's pleas. The other assignments are exceptions to the charge given by the court to the jury, and to the refusal to charge as requested by the plaintiff. When a demurrer to a plea is improperly overruled, the presumption of injury arises, and will operate a reversal, unless it appears by the record that injury did not result to the party against whom the error is committed.

Mitcham v. Moore, 73 Ala. 542; Gilmer v. Higley, 110 U. S. 47, 3 Sup. Ct. Rep. 471.   Where the plaintiff has been deprived of no substantial right in introducing his claim, an error in overruling a demurrer to the pleas must be regarded as error without injury, and is not a cause of reversal.  Owings v. Binford, 80 Ala. 421.   But in our view of this case the determination of the question whether the demurrers to the pleas were properly or improperly overruled is unnecessary.   The only assignment of error which we think is material in the case is the exception taken to the charge of the court directing a verdict for the defendant.   If that charge was justified, the refusal to give the special charges requested by the plaintiff can be of no consequence, and need not be considered.

The plaintiff contracted to build the cotton mill or factory at the stipulated price of $60,000, to be paid by defendant in installments, at designated times of payment, on the happening of certain events, or the completion of certain parts of the work.   No portion of the contract price was to be paid for any particular part of the work. Both of the parties entered into the performance of the contract, and both in part performed it.   The plaintiff begun work, and completed the foundations of the buildings.   The defendant paid the first installment on the contract price, but failed to pay the second and third installments as stipulated for in the contract.   On defendant's default in making these payments the plaintiff quit work, claimed and treated the contract as broken, and declared his unwillingness to proceed further with the work except on condition that the money due on said two installments was first paid to him.   This condition was not complied with, and no more work was done by the plaintiff.   If he was, without fault on his part, prevented by the defendant from performing the contract, or if the conduct of the defendant excused him for his nonperformance, he had the right to regard the contract as broken, and to immediately sue to recover all the damages resulting from its breach, which would be the actual loss he sustained thereby.   The measure of damages is the amount of expenses and outlay fairly incurred by the plaintiff towards performance, and the profits he might have realized by performing the whole contract.   Strauss v. Meertief, 64 Ala. 299; U. S. v. Behan, 110 U. S. 338, 4 Sup. Ct. Rep. 81.; Add. Cont. § 881; Chamberlin v. McAlister, 6 Dana, 352. .

The contention of the plaintiff is that he sues to enforce the contract which is still subsisting; that the defendant has broken it, but that he has faithfully kept it; and that he sues to recover payments which are, under and according to its terms, due and payable by the defendant.   But the proof shows that the plaintiff claimed that the defendant had wrongfully put an end to the contract, and that he, the plaintiff, treated it as broken, and elected to abandon and terminate it.   In such a case he could sue to recover the value of the services actually performed under the contract, as upon a quantum meruit, or he could sue for a breach of the contract, to recover, as we have said, his actual damage.   We think he pursued the latter course.   Is he then entitled to recover anything in this suit?   It appears that the outlay and expenses incurred by him in

and about the work done amounted to $3,200, and that he received from the defendant $5,000, being an excess of $1,800 over the amount of his expenditures. While he was entitled to recover any profits he might have realized as the direct fruits of the contract, in order to furnish a ground of recovery they must be proved. None were proved. Inasmuch, then, as the plaintiff failed to prove any damage in the loss of profits, and admitted that he had been more than paid for his outlay and expenses, he was entitled to recover nothing, and there was no error in the charge of the court directing a verdict for the defendant. The judgment is affirmed.