MICHIGAN YACHT & POWER CO. et al. v. BUSCH.

(Circuit Court of Appeals, Sixth Circuit. March 16, 1906.)

No. 1,488.

1. CONTRACTS—CONSTRUCTION—SECURITY FOR PERFORMANCE.

Defendants contracted to build for plaintiff a launch of certain speed and dimensions, to be paid for in installments as the work thereon progressed. As a part of the contract, defendants were to loan plaintiff, free of charge, another launch until the delivery of the one contracted for. *Held*, that the boat loaned did not stand as security for the completion of the other according to the terms of the contract, and the fact that defendants had sold her did not justify plaintiff in refusing to pay the second installment until other security was given.

2. SAME—NONPERFORMANCE—EXCUSE—FAILURE TO PAY INSTALLMENT.

A positive refusal by one for whom a launch was being built to pay an installment according to the terms of the contract, unless the builders would give him a security they were under no obligation to give, relieved them from further performance on their part.

3. SAME—RECOVERY OF PAYMENTS.

A party to a contract which he has himself failed to carry out may under the common counts recover money paid by him in part performance to the extent that his payment was beneficial to the other party and in excess of the damages sustained by reason of the breach.

4. ASSIGNMENTS—ACTION AGAINST ASSIGNOR—AMOUNT OF RECOVERY.

Under Comp. Laws Mich. 1897, § 10,054, which provides that the assignee of a nonnegotiable chose takes subject to every defense which existed before notice of assignment, where the assignor of a contract to build a boat is sued by the other party who has himself breached the contract, upon the common counts, in assumpsit, for payments made by him, the limit of such recovery is the excess of payments made over the damages sustained by reason of the breach.

5. SET-OFF AND COUNTERCLAIM—RECOUPMENT—BREACH OF CONTRACT.

Where one party to a contract sues the other party to recover payments made thereon, the latter may show that plaintiff has himself broken the agreement and prove his damages for such breach, and thus cut down or wholly extinguish the plaintiff's claim.

[Ed. Note.—For cases in point, see vol. 43, Cent. Dig. Set-Off and Counterclaim, § 6.]

In Error to the Circuit Court of the United States for the Eastern District of Michigan.

This was an action in assumpsit to recover money paid upon a contract for the construction of a boat to be built for the plaintiff by the defendants. The contract between the parties was in writing and bore date of December 5, 1901. The defendant companies undertook to furnish all of the materials and construct and equip and deliver in New York June 1, 1902, one launch according to plans and specifications covering dimensions, fittings, equipment, and speed. In consideration of this agreement, plaintiff agreed to pay $8,500 as follows: $2,125 in advance on signing the contract; $2,125 when the boat is planked and already for inside finish; $2,125 when ready to launch; balance when delivered in New York. It was provided, among other things, that there should be a speed trial before delivery, and that if the boat "failed to develop a speed of 16 miles per hour," or to come up otherwise to specifications, "then C. M. Busch may declare the contract void and demand a return of the money already paid."

Another provision was in these words: "It is part of this contract that the Michigan Yacht & Power Company and the Sintz Gas Engine Company

will loan to C. M. Busch, free of charge, the launch 'Helen,' with complete outfit, until the delivery of the boat contracted for or until the cancellation of this contract or the refunding of the cash paid thereon, as provided for above. The 'Helen' is to be delivered f. o. b. cars in Detroit to C. M. Busch and he is to pay all expenses on her thereafter until delivered in New York Harbor on the delivery of the new boat as above specified. C. M. Busch agrees to be fully responsible for the 'Helen' while in his charge and to deliver her as above specified in first class condition in New York Harbor."

The plaintiff alleges that he made the advance payment required by the contract, but that the defendants have failed entirely to perform said contract and have failed to build and deliver a launch as required, though often requested to do so. Plaintiff avers that he has well and faithfully performed each and all of the obligations of the agreement, etc.

The defendants plead the general issue, and gave notice as required by the local practice of a claim of recoupment, in which they aver that they did perform the contract and stood ready and willing to perform, and that, when the boat so contracted for "was planked and ready for inside finish," they gave notice and demanded payment of the second installment, which payment was refused wrongfully, and though many times requested to make said payment refused, whereby the defendants were greatly injured and damaged, etc.

Upon the issues joined there was evidence showing the boat being constructed for the plaintiff, had been so far carried forward as that it was "planked and ready for inside finish" some time in January, 1902, and that the plaintiff caused an inspection to be made upon notification and made no complaint that the condition was not such as was requisite before the second installment was due and payable. Upon being several times solicited to make payment then due, Mr. Busch advised with counsel and through his said counsel demanded that security be given him by the builders for the due performance of their contract as a condition to payment of any further installments.

The ground upon which this demand was made is shown best by the letter which Mr. Busch caused to be written, which was as follows:

"Atlantic City, N. J., Feb. 20, 1902.

"Michigan Yacht & Power Co., Sintz Gas Engine Co., Detroit, Michigan—Gentlemen: Mr. C. M. Busch has shown me contract of December 5, 1901, for construction of launch and also your letter to him of the 8th inst., in which you say that the yacht 'Helen' has been sold by your company to a Mr. Pungs. By the terms of the agreement the yacht 'Helen' is to be loaned to Mr. Busch free of charge until the completion of the boat contracted for, and as a security for the payment made on account of the 'Helen' contract and to be made under contract of December 5, 1901. The information that the 'Helen' is not your property has caused Mr. Busch to feel insecure, both as to the money already advanced and that required to be paid by the terms of the contract of December. You will at once appreciate that Mr. Busch ought to have ample security for money he has paid you and is called upon to pay under his contract. In view of the fact that he now seems to be without security, I write you as his attorney to say that you must in some way provide indemnity against any loss, in the event of the new boat proving unsatisfactory or not, being in compliance with the contract. Even though you were the owner of the 'Helen' and Mr. Busch might regard it as his property should you fail to complete the new boat the security in the 'Helen' is quite inadequate for $6,375 which Mr. Busch is required to pay before the new boat is delivered. Please acknowledge receipt and advise what your company is willing to do under the circumstances.

'Yours very truly,                                    C. L. Cole."

To this defendant replied under date of February 24, 1902, as follows:

"Detroit, Mich., February 24, 1902.

"Mr. C. L. Cole, Atlantic City, N. J.—Dear Sir: Replying to your favor of the 20th inst., will say that the launch 'Helen' was not furnished Mr. Busch

as security in any sense of the word. Mr. Busch's is in the new boat we are now building for him. His contract is plain and a duplicate of all contracts we make for boats. Mr. Busch has no reason to feel insecure about the title of the 'Helen,' because he has no interest in her whatever. Mr. Busch asked for no security when he signed the contract and we gave him none. We never had such a proposition presented to us before, although we have built a great many boats. We are under no obligation whatever to furnish Mr. Busch any further security than we are furnishing him in the boat we are building for him. We have asked for no payment on this boat until it was due and until there was more money in the boat than Mr. Busch has furnished. We ask that you please read this contract again and see if you have not made a mistake in assuming that we ever agreed to furnish Mr. Busch any other security than the boat we are building for him. Yours truly.

"Dic. H. A. W.

"P. S. A payment on this boat has been due since some time in January and Mr. Busch's treatment of this part of the contract has been very dilatory. He sent a representative here to examine the condition of the boat and was to remit us the payment after receiving this report. It is now a week since his representative reported and we have every reason to believe that the report was favorable."

This did not satisfy Mr. Busch, who, on advice of counsel, persisted in his refusal to make the payment due and refused payment of a draft drawn for the installment so due.

Thereupon defendants wired him under date of February 27, 1902: "All work on your boat is stopped, waiting the fulfillment of your part of the contract." There was evidence tending to show that defendants kept the unfinished boat in condition when payment of second installment was refused for about one year, and then disposed of it to another purchaser at the best price obtainable at a loss exceeding the amount received from plaintiff as an advance payment.

Upon the conclusion of all the evidence the trial judge instructed the jury to return a verdict for the advance payment made by plaintiff, with interest.

Dwight W. Rexford, for plaintiffs in error.

S. T. Douglas, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge, after making the foregoing statement of the case, delivered the opinion of the court.

The case in short is this:

The defendants agreed to supply materials, machinery, etc., and build and deliver by June 1, 1902, a completed launch, with a guaranteed speed of 16 miles, to be constructed according to plans and specifications. The plaintiff agreed to pay for such boat the sum of $8,500, of which $2,125 was to be paid down, the balance in installments as the work progressed. The second installment he agreed to pay when the boat was planked and ready for inside finish. When that stage of the work was reached and this second installment was due, he refused to make the payment unless the defendants would give security for their performance of the agreement or pay back the money received as the work should progress. That the Helen was never intended to stand as a security for the completion of the boat contracted for according to contract or for the return of the installments paid if she failed to develop the guaranteed speed or come up to the substantial terms of the contract otherwise is not a matter of

serious doubt. There is no word in the agreement which squints that way. The Helen was to be a "loan" without rent. The consideration for her use.was part of the price to be paid for the launch contracted for. If the purpose was that she was to stand as a security, it is extraordinary that no intimation of the intent is found in the long and elaborate agreement between the parties. The refusal to comply with the distinct agreement to pay an installment of $2,125 when the boat was planked and ready for inside work, unless the defendants would give a security they were not obliged to give, was in substance and effect a refusal to carry out the agreement unless the defendants would add a new term to the contract.

But the learned counsel say that, if the plaintiff was in error in refusing to pay this installment unless a satisfactory security was given him, it was not conduct evidencing an intention to abandon the contract, and did not, therefore, justify defendants in their refusal to complete the boat. In short, that the breach was not such a breach as set the defendants free. It must be conceded that even in the case of a single or entire contract, such as this was, when articles are deliverable or payments to be made in installments, that the mere failure to deliver or receive an installment or to pay an installment of the price may not by itself evince an intention no longer to be bound by the contract.

In Freeth v. Burr, L. R. 9, C. P. 208, 213, Lord Coleridge said:

"The real matter for consideration is whether the acts or conduct of the one do or do not amount to an intimation of or an intention to abandon and altogether to refuse performance of the contract. * * * Now, nonpayment on the one hand, or nondelivery on the other, may amount to such an act, or may be evidence for a jury of an intention wholly to abandon the contract and let the other party free."

When the question is whether one party is relieved from the performance of his part of the contract by the conduct of the other in failing to make a payment when it was due, we must look to all of the circumstances of the case to see whether that conduct amounts to an out and out refusal to perform the contract. This is the substance of what is said in Withers v. Reynolds, 2 B. & Ad. 882, 885; Freeth v. Burr, cited above; Mersey Steel Co. v. Naylor, L. R. 9, App. Cases 434, 438; Norrington v. Wright, 115 U. S. 188, 210, 6 Sup. Ct. 12, 29 L. Ed. 366, and by this court in Cherry Valley Iron Works v. Florence Iron Co., 64 Fed. 569, 572, 12 C. C. A. 306, and in Monarch Cycle Co. v. Roger Wheel Co., 105 Fed. 324, 44 C. C. A. 523. Mere nonpayment of an installment when due is an element of importance, and in some circumstances may evince a renunciation of the contract. But this case, as shown by the correspondence and other evidence, was not a simple case of omission to pay as the plaintiff was bound to do, but was a positive refusal to perform the contract upon his part unless the defendants would give him a security they were under no obligation to give. That he was willing to have the contract carried out if the defendants would accede to his terms and do what they were not obliged to do does not help the case but only serves to emphasize his determination not to carry out the contract as it was writ-

ten, and justified the defendants in treating the plaintiff as having renounced the agreement.

In Withers v. Reynolds, cited above, the agreement was to deliver straw at 33 shillings per load; the purchaser agreeing "to pay 33 shillings per load for each load of straw so delivered on his premises from this day until January 24th." The straw was delivered regularly, but defendant fell behind for several loads. Payment was demanded. Defendant tendered the price of all the straw except the last load, saying "he should always keep one load in hand." The defendant objected to this, but at length accepted what was offered, and then told plaintiff he would send no more straw unless it was paid for on delivery. No more was sent, and plaintiff sued in assumpsit for not delivering pursuant to agreement. Lord Tenterden said:

> "I am of the opinion that the plaintiff is not entitled to recover. There is, I think, no doubt that by the terms of this agreement the plaintiff was to pay for the loads of straw as they were delivered. If that were not so, the defendant would have been liable to the inconvenience of giving credit for an indefinite length of time, and, in case of nonpayment, bringing an action for a very large sum of money, which does not appear to have been intended by the contract. Then the only question is whether upon the plaintiff's saying, 'I will not pay for the goods on delivery' (for that was the effect of his communication to the defendant), it was incumbent on the defendant to go on supplying straw; and he clearly was not obliged to do so."

Withers v. Reynolds has never been overruled. It was followed in Bloomer v. Bernstein, L. R. 9, C. P. 588, when the effect of a failure to pay for an installment of goods on delivery by reason of insolvency was considered. It was followed again in Stephenson v. Cady, 117 Mass. 6. In the latter case there were separate contracts for the sale of goods made on different days and deliverable at different times, price payable on delivery. The purchaser refused to pay for the goods delivered under the first contract unless the seller would give him security for the performance upon his part of the other contracts. The seller thereupon refused to make other deliveries, and was sued for damages. The Massachusetts court held the refusal to pay for the goods delivered unless the seller would give security for the entire fulfillment of the contract was enough to justify the seller in refusing to make further deliveries. Among other things, that court said:

> "It was a refusal to execute a substantial part of the agreement; and an attempt, by holding on to the property without payment, to impose an onerous condition not contemplated by the original contract, and to which the defendant was not required to submit, so long as he was without default. It was something more than a refusal to pay for a single delivery. It was broad enough to be treated as a general refusal to make any further payments. It was prospective in its character, and was made with notice that such refusal would be regarded as releasing the defendant from all obligation to fulfill. Conduct less decisive has been held to justify nonperformance by the other party to the contract."

West v. Bechtel, 125 Mich. 144, 84 N. W. 69, 51 L. R. A. 791, does not refer to or distinguish either Withers v. Reynolds or Stephenson v. Cady, and must rest upon its own special facts which are quite unlike the evidence here relied upon to show that the conduct of the

plaintiff was such as to evince a refusal to perform the contract upon his part.

It follows that the court erred in instructing a verdict for the plaintiff. The defendants were at liberty to treat the contract as broken in a material part, and might refuse to further perform and recover damages, for the loss sustained by such renunciation of the contract by Busch.

The refusal to go on and finish the boat under such circumstances would not constitute a technical rescission of the contract, but, as stated in Anvil Mining Co. v. Humble, 153 U. S. 540, 552, 14 Sup. Ct. 876, 38 L. Ed. 814, by Justice Brewer, would be "merely an acceptance of the situation which the wrongdoing of the other party has brought about." To same effect is our own case of Cherry Valley Co. v. Florence Iron Co., 64 Fed. 569, 573, 12 C. C. A. 306.

While the plaintiff cannot recover upon the contract, he may under the common counts recover the money paid by him in part performance to the extent that his payment was beneficial to the defendants and in excess of the damages they have sustained by reason of plaintiff having breached the contract. If the defendants have obtained money which ex æquo et bono they ought not to withhold from the plaintiff, they should refund, and the law implies a promise to that effect. Murphy v. Craig, 76 Mich. 155, 42 N. W. 1097; Walker v. Conant, 65 Mich. 194, 31 N. W. 786; Wilson v. Wagar, 26 Mich. 452.

If the defendants had sued the plaintiff for breach of the contract, as they might well have done, the measure of damages would have been, first, their outlay and expense in carrying the work as far as they did before the plaintiff set them free, less the value of the structure as far as completed and materials, machinery, etc., bought solely to carry out this contract; second, the profits they would have realized if permitted to complete the boat; third, the value of the use of the Helen while in possession of the plaintiff under the contract. From this should be deducted the money received from the plaintiff on account of the contract. United States v. Behan, 110 U. S. 339, 4 Sup. Ct. 81, 28 L. Ed. 168; Anvil Mining Co. v. Humble, 153 U. S. 540, 14 Sup. Ct. 876, 38 L. Ed. 814; McElwee v. Bridgeport Improvement Co., 54 Fed. 627, 629, 4 C. C. A. 525. The defendants did not sue, but have been sued by the plaintiff for the money paid by him in part performance. In justice the defendants have no right to more of this money than will compensate them against loss by reason of plaintiff's conduct. His action is therefore one upon the common counts for money received under an implied promise to pay back that which is in excess of the loss sustained by the defendants by reason of plaintiff's refusal to carry out the contract. It is in the nature of an action upon a quantum meruit.

Instead of having done labor or furnished materials in part performance from which the defendants have benefited, he has furnished money, and it is now well established that a plaintiff may recover to the extent that he has benefited the defendant by part performance of a contract which the plaintiff himself has failed to carry out; his recovery being subject to recoupment by the damages sustained by the defendant. Cherry Valley Iron Co. v. Florence Iron River Co.,

64 Fed. 569, 574, 12 C. C. A. 306; McDonough v. Evans Marble Co., 112 Fed. 634, 637, 50 C. C. A. 403; Clark v. Moore, 3 Mich. 55, 58; Wilson v. Wagar, 26 Mich. 452; Ward v. Fellers, 3 Mich. 281.

In Cherry Valley Iron Co. v. Florence Iron Co., the plaintiff had himself broken a contract for the purchase of a large quantity of iron ore. But he had paid for more ore than he had received. This court, speaking by Judge Severens, sustained an action by him to recover the money he had paid in excess of ore delivered to him. Upon this point the court said:

"The position of the parties, therefore, is this: The plaintiff is entitled to recover the amount which it has paid in excess of the contract price of the quantity of ore actually delivered, and the defendant was entitled to recover, by way of counterclaim, the damages which it had sustained from the plaintiff's breach of the contract," etc.

In McDonough v. Evans Marble Co., cited above, we said:

"The rule is that a party who has failed to perform his contract in full may recover compensation for the part performed, less the damages occasioned by his failure."

There was evidence tending to show that the Sintz Engine Company, one of the defendants, had substantially absorbed and acquired the property of the other defendant, the Michigan Yacht Company, when the contract involved was made, but that the contract was signed by both companies. There was also evidence that long after the breach of the contract in suit, and long after the defendants had disposed of the unfinished launch to another customer at a great loss, the Sintz Engine Company made a chattel mortgage to Mr. Wm. A. Pungs, and that the property described in that instrument was sold in a foreclosure proceeding on October 1, 1904, and bought by Pungs. Among the matters so sold and purchased were the "book accounts and bills receivable owing to said Sintz Engine Company."

Upon this state of facts the plaintiff below insisted that the money paid by plaintiff in part performance could not be diminished or effected by any damages or loss sustained by the defendants, because, as claimed, they "had parted with all their claims, accounts and property of every description," and "could not recoup damages in this action from this plaintiff." If we assume that the right of action which defendants had to sue for the loss sustained by them by reason of the plaintiff's breach of his contract passed to Pungs under an assignment which included "book accounts and bills receivable," it is clear that such a chose in action would pass subject to a credit for the $2,125 received by defendants on account of plaintiff's part performance. To that extent the defendants may be said to have been already indemnified. Section 10,054, Comp. Laws of Michigan 1897, expressly provides if that were ever necessary that the assignee of a nonnegotiable chose takes subject to every defense which existed before notice of assignment. Or, if the effect of the assignment under which Pungs holds the assets of the Sintz Engine Company was to pass the contract for the construction of this boat for plaintiff, the assignee would take it subject to every defense which the plaintiff could have made if the assignor had sued for a breach. One of these

defenses would be to recoup any recovery for a breach by the amount paid in performance. 3 Page on Contracts, § 1269; 25 Am. & Eng. Ency. (2d Ed.) 529.

This being the case, it must follow that if the assignor of a contract, not negotiable, be sued, as here, upon the common counts, in assumpsit, for benefits received by him, that the limit of such recovery must be, where the plaintiff himself breached the contract, the excess of benefit received over the damage sustained by reason of the plaintiff's nonfulfillment of the agreement. This reduction of the amount otherwise recoverable is by way of recoupment. That it exists in favor of the defendants here we have no doubt, regardless of any assignment of the contract out of which plaintiff's right of action grows. The assignors cannot escape liability for the amount equitably due to the plaintiff by the assignment, nor can the plaintiff prevent a reduction of his nominal claim by application of the doctrine of recoupment as distinguished from set-off. Recoupment in its truest sense means a right of deduction from the amount of the plaintiff's claim by reason of either a payment thereon or some loss sustained by the defendant by reason of the plaintiff's wrongful or defective performance of the contract out of which his claim originated. It has been defined to be "a keeping back of something which is due because there is an equitable reason for withholding it." Ives v. Van Epps, 22 Wend. (N. Y.) 155; Ward v. Fellers, 3 Mich. 281, 291; Wheat v. Dotson, 12 Ark. 699, 702. The word is nearly if not quite synonymous with discount or deduction or reduction. 2 Pars. on Contracts (7th Ed.) 880; Hatchett v. Gibson, 13 Ala. 587, 595.

It is accordingly well settled that, when one party brings suit to recover under a contract or upon the common counts for work and labor done or money paid to or for his benefit, the defendant may show that the plaintiff has himself broken the agreement and prove his damages for such breach, and thus cut down or wholly extinguish the plaintiff's claim. 25 Am. & Eng. Ency. Law, 549; Railroad Company v. Smith, 21 Wall. 258, 262, 22 L. Ed. 513; Allen v. McKibbin, 5 Mich. 449; Cushman Telephone Co. v. Noble, 98 Mich. 67, 56 N. W. 1100; Porter v. Woods, 3 Humph. (Tenn.) 56, 39 Am. Dec. 153. In the case last cited the Tennessee court said:

"After the rescission and abandonment of a special agreement compensation for partial performance may be recovered, equal to, and limited by, the value and extent of the benefit conferred. And therefore the defendant in such action, in the second place, is entitled, by the very statement of the principle with its proper limitation, to abate the recovery of the plaintiff by the damages he has sustained on account of the nonperformance of the plaintiff's portion of the agreement. For the plaintiff himself being entitled to recover, not on the ground of his performance of the special agreement, but for valuable materials furnished, or beneficial services rendered, and only to the extent of benefit conferred on the defendant, the defendant must be entitled in abatement, and in ascertaining the extent of such benefit, to such damages as in a cross-action by him against the plaintiff he ought to recover for the nonperformance by the other of his portion of the agreement."

The court therefore erred in excluding evidence of the damages sustained by the defendants through the plaintiff's breach of the contract out of which the plaintiff's claim arose.

Reverse for a new trial.