## EL PASO CATTLE CO. v. STAFFORD et al.

(Circuit Court of Appeals, Sixth Circuit. December 7, 1909.)

### No. 1,973.

1. **VENDOR AND PURCHASER (§ 110*)—SALE CONTRACT—RESCISSION—DEFECTS IN TITLE—CORRECTION—ABSTRACT—INSUFFICIENCY.**

   A contract for the sale of land required the vendor to furnish at his own expense abstracts of title, and submit them for examination, and, in event that the vendees' attorney found any substantial defect, the vendor on request was to use his best efforts to correct the defect, and, if he was unable to do so, then the vendees might, at their election, rescind and receive back the earnest money. *Held*, that the vendees' right to rescind was conditional on substantial defects in the title and the failure or inability of the vendor, on request, to correct them, and that a rescission, because of the vendor's failure to furnish a complete abstract of title without any showing that the vendor was unable or unwilling to submit a proper abstract, was unauthorized.

   [Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 196; Dec. Dig. § 110.*]

2. **VENDOR AND PURCHASER (§ 110*)—PERFORMANCE BY VENDOR—RESCISSION.**

   A contract for the sale of Mexican lands required the vendor to arrange an agreement with the Mexican government for transfer of certain concessions with reference thereto, and provided that, if the vendor should be unable to procure the transfer of the concessions, the vendees, at their election, might rescind and recover the earnest money. *Held* that, where the only objection made by the vendees to the offered transfer of the concessions was that it did not comply with the terms of the contract, such objection did not show that the vendor was "unable" to procure the transfer required, but, at most, only that the parties differed in opinion as to the form of agreement, which was no justification for the vendees' rescission.

   [Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 196; Dec. Dig. § 110.*]

3. **VENDOR AND PURCHASER (§§ 76, 78*)—DELIVER OF DEED—TRANSFER OF CONCESSIONS—CONCURRENT ACTS.**

   Where a contract for the sale of Mexican lands also provided that the vendor should arrange an agreement for the transfer of certain concessions with reference thereto obtained from the Mexican government, and provided that the vendees should secure the right to hold the lands and be ready to accept a conveyance of the lands and concessions when the vendor was in a position to make the same under the terms of the contract, time was not of the essence of the vendor's agreement to obtain a transfer of the concessions, but such transfer and the delivery of the deed were concurrent requirements.

   [Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 119, 121; Dec. Dig. §§ 76, 78.*]

4. **VENDOR AND PURCHASER (§ 92*)—CONTRACT—BREACH BY VENDEES.**

   Insistence by vendees on the return of a deposit made to secure performance of a contract for the sale of land made in anticipation of the time of performance, while the contract was executory, was inconsistent

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

with further performance of the contract, and tantamount to a refusal by the vendees to perform, authorizing the vendor to treat the contract as terminated.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 149; Dec. Dig. § 92.*]

**5. ASSIGNMENTS (§ 94*)—RIGHTS OF ASSIGNEES.**

Where vendees, under contract for the sale of land, did not assign their rights under the contract, including an alleged right to recover a deposit to secure performance to plaintiff until more than three years after they had repudiated all obligation under the contract, plaintiff was bound by the acts of the vendees.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. §§ 162–165; Dec. Dig. § 94.*]

**6. VENDOR AND PURCHASER (§ 334*)—CONTRACT—RESCISSION—RECOVERY OF DEPOSIT—QUASI CONTRACT.**

Where vendees deposited $15,000 to secure performance of a written contract for the sale of land and having rescinded the contract for the vendor's alleged breach, their assignee sued on the contract for the recovery of the deposit in which action it was determined that the vendees and not the vendor had broken the contract, and that their rescission was not justified, their assignee could not recover any part of the deposit in such action on the theory of quasi contract that it was money which the vendor in equity and good conscience ought not to keep.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 959; Dec. Dig. § 334.*]

Error to the Circuit Court of the United States for the Northern District of Ohio.

Action by the El Paso Cattle Company against Oliver M. Stafford and another. Judgment for defendants, and plaintiff brings error. Affirmed.

The El Paso Cattle Company, a Nebraska corporation, brought this action in the court below against Oliver M. Stafford, a citizen of Ohio and resident of Cleveland, and the Broadway Savings and Loan Company, an Ohio corporation. The object of the action was to recover for breach of contract certain damages against Stafford and also to recover of him and his codefendant certain money previously deposited with the latter pursuant to the contract. The contract, dated January 4, 1902, was in writing and made between Stafford of the one part and Edward J. Carter and Jeptha D. Ryan of the other part. It provided for the sale by Stafford to Carter and Ryan of about 2,000,- 000 acres of land in the state of Chihuahua, Mexico, for the sum of $300,000, payable $15,000 cash upon execution of the agreement and the balance upon delivery and acceptance of the deed of conveyance. The latter sum was the amount deposited with the defendant savings company. The land belonged to and stood in the name of the Northwestern Colonization & Improvement Company, a corporation of New Mexico. That company also held certain concessions under the national government of Mexico, granting exemption from taxation and certain customs duties for a period of fifteen years respecting the land and the importation of materials for its improvement, subject to obligation to colonize people on the land in certain numbers. The contract provided that Stafford should "arrange an agreement with the national government of Mexico for the transfer of these concessions" to Carter and Ryan or their assigns or nominee, and that Stafford should comply with the concessions regarding the placing of colonists on the land. It appears in a preamble to the contract that through Stafford's ownership and control of the stock and bonds of the colonization company he claimed and was advised that he could by proceedings to foreclose the mortgage securing the bonds, make good title to the land, and that Carter and Ryan were

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

willing to purchase the land provided Stafford was "so able to make good title." The other relevant features of the contract are stated in the opinion. The rights of Carter and Ryan under the contract were ultimately in terms transferred to the plaintiff.

Allegations of the petition of due performance on the part of Carter and Ryan and refusal of performance by Stafford were brought to issue by answer and cross-petition of Stafford; the latter also charging failure and refusal of Carter and Ryan to perform, and asking damages in consequence. Trial before the court and a jury resulted in a directed verdict for defendants. The cause is here upon proceedings in error.

J. M. Dawson, for plaintiff in error.

William B. Sanders, for defendants in error.

Before LURTON, SEVERENS, and WARRINGTON, Circuit Judges.

WARRINGTON, Circuit Judge (after stating the facts as above). The assignments of error disclose many complaints of the manner in which the case was disposed of in the court below. These complaints seem to have originated in a difference of opinion between court and counsel as to the effect of certain evidence, which was offered early in the trial. The court regarded plaintiff's cause of action as based on a charge that Stafford had committed a breach of the contract, and this evidence as showing that plaintiff's assignors were alone chargeable with its breach. It was for this reason that the court excluded much of the evidence offered by plaintiff in error, and of its own motion directed a verdict to be returned for defendants.

It is true that the action is founded on the contract of January 4, 1902, and the alleged performance by Carter and Ryan and their assignee, the plaintiff, of "each and every of the terms, provisions and conditions of said contract on their part stipulated to be done and performed," and also upon the alleged failure and refusal of Stafford and his codefendant to perform any of the acts or things required of them under the contract. In short, the petition contains only one count and is framed on the theory of a contract made and kept on plaintiff's side, and made and violated on defendants' side. In order rightly to understand the ruling under review, it is necessary to examine the evidence upon which the court acted.

Plaintiff offered as a witness at the trial its president, McPherson, who seems to have been authorized to act for Carter and Ryan, and who testified that he was also cashier of the Union Stockyards National Bank, South Omaha, Neb.; that on June 28, 1902, defendant Stafford called upon him at the bank " * * * to make, as he said, a tender of what purported to be a deed of the lands covered by that contract and other papers in connection with the deal. At that time Mr. Stafford demanded payment of the balance of the purchase price due under that contract, and I said it was impossible to make that payment at that time without having thoroughly examined the documents, the originals of which were in Spanish, and what purported to be the copies of those originals were in many cases attached. * * * After an extended interview on the subject, Mr. Stafford prepared a receipt for papers which he described, * * * and I signed that receipt as

cashier of the bank; the bank being designated as custodian of those papers. * * * "

The receipt so referred to was identified by McPherson in his cross-examination, and received in evidence against objection of plaintiff's counsel. The witness in his cross-examination also identified a letter to him from Stafford, and admitted his signature to an appended receipt other than the receipt before mentioned. These latter papers appear to have been signed at the foregoing interview. They were received in evidence over objection of plaintiff's counsel, and are as follows:

"South Omaha, Nebraska, June 28, 1902.

"Mr. T. B. McPherson, South Omaha, Nebraska—Dear Sir: Referring to my contract of January 4, 1902, with Messrs. Edward Carter, of Chicago, and Jeptha D. Ryan, of Leavenworth, Kansas, I beg to say, I am now ready on my part to fulfill all obligations of this contract, and I offer you herewith a deed conveying good and sufficient title to Messrs. Carter and Ryan of the land purchased by them under this contract. Also an agreement for transfer of the concession of Mexican government to said Ryan and Carter, as in said contract provided.

"I also submit abstracts of title showing good and legal title in the grantor in the deed which I tender you. This tender I make to you as representing Messrs. Carter and Ryan, and respectfully request of you the payment of the balance of purchase money due under said contract. O. M. Stafford."

"On behalf of Messrs. Edward J. Carter and Jeptha D. Ryan, I acknowledge receipt of the above letter from O. M. Stafford, and also that he offered to me the instruments of transfer referred to in his foregoing letter, and claimed by him to legally and effectually to transfer the property and concession referred to in said contract, and also requested of me the payment of the balance of the purchase money due under said contract.

"Thos. B. McPherson."

The witness further testified that, after he received the papers, "he referred the matter" to their attorneys, and subsequently received a report from them. Plaintiff offered in evidence a letter from Ryan, one of the signers of the contract, to Stafford, dated July 14, 1902, as follows:

"Dear Sir: I am advised by Mr. McPherson, with whom you left certain papers, covering the title to Mexican lands and the concession included in our mutual contract of January 4, 1902, that the attorneys to whom this matter has been referred, inform him that there are among the papers left with him no abstract of title that will enable them to pass upon the title to the lands in question.

"The attorneys also say that the so-called consent to the assignment of the concession does not comply with the terms of the aforesaid contract. I have, therefore, to request that you instruct the Broadway Savings & Loan Co. Bank to remit the Union Stockyards National Bank of South Omaha, Neb., the money deposited in escrow with it and payable to us under the terms of the contract of January 4, 1902.

"I have transmitted a carbon copy of this letter by registered mail to the Broadway Savings & Loan Co. Bank for their information."

Plaintiff offered in evidence the following letter dated July 19, 1902, from Stafford to McPherson, in which was inclosed the above letter from Ryan to Stafford:

"The inclosed letter from Mr. Ryan, of July 14, 1902, explains itself. * * * May I ask you to tell me frankly by return mail what your position is, that I may be able to decide upon my future course in the premises."

In the cross-examination of McPherson a letter from McPherson to Stafford, dated July 21, 1902, was introduced, as follows:

"I have yours of the 18th inst., also yours of the 19th, and in reply have to say that the letter sent you by Mr. Ryan is final so far as the contract of January 4, 1902, is concerned. * * *"

Plaintiff also offered in evidence the following letter from Stafford to McPherson, dated July 26, 1902:

"I beg to acknowledge receipt of yours of the 21st inst., and enclose you a reply which I have sent to Mr. Ryan in answer to his letter of the 14th inst. * * *"

Plaintiff then offered in evidence the letter from Stafford to Ryan, referred to in the one just set out:

"I have your favor of the 14th inst., in which you make the surprising demand that the fifteen thousand dollars ($15,000.00) paid by you and your associates under our mutual contract of January 4, 1902, should be remitted for your account to the Union Stockyards National Bank.

"I have fulfilled all the obligations of our contract of January 4, 1902, upon my part to be performed. You and your associates on the contract are in default of performance, and I suppose I am to understand your letter as a refusal to accept the deed which has been tendered you and make payment of the balance of the purchase money which is due.

"You will therefore please take notice that I no longer am bound to make a conveyance of said property. * * * As you and your associates are in default and not I, the money belongs to me, and I shall retain it, and shall further look to you and your associates to make me good for the damages sustained by your failure to comply with your contract obligations."

The correspondence seems to have been closed by a letter from Ryan to Stafford dated August 20, 1902, in which he attempts to interpret the past acts of the parties rather than to state anything of an evidential character. If the letter from Stafford to McPherson dated June 28, 1902, and the receipts given by McPherson on that day were alone considered, it would appear that Stafford seasonably tendered a deed purporting to convey the land in question to the purchasers, Carter and Ryan, and also a form of agreement for transferring the concessions. These papers with others were referred to plaintiff's counsel, who, as appears in Ryan's letter of July 14, 1902, above quoted, made objections to them in a report to McPherson. But the importance of these objections is greatly diminished, if not destroyed, in this action, by the conduct of the purchasers. Instead of communicating the objections to the seller and furnishing him an opportunity to make corrections, they forthwith demanded return of the $15,000, which in pursuance of the contract had been deposited with the defendant Savings & Loan Company.

The contract required Stafford, party of the first part, to " * * * furnish at his own expense abstracts of title to the said lands and to submit the same to the attorneys of the party of the second part for examination, and, in event that said attorneys find said titles in any substantial respect defective, said party of the first part, upon request, agrees that he will use his best efforts to correct such defects, and if he is unable to do so, then and in such event, the party of the second part may, at their election, rescind this contract, and upon the exercise of such election, shall be entitled to receive from the party of the

first part the cash payment of $15,000, which shall have been paid under this contract, together with the accumulated interest thereon at said Broadway Savings & Loan Company."

It is to be observed of this provision that the right to rescind plainly depended on substantial defects in title, and failure or inability in Stafford on request to correct them. But the only complaint made in respect of title in the Ryan letter of July 14th, was the absence of an "abstract of title that will enable them (purchasers' attorneys) to pass upon the title to the lands. * * *"

The implication plainly is that there was some sort of an abstract submitted, but that it was not complete. This was not showing that there was in reality any defect in title. It was, at most, showing only that the means for determining that question were not present. Nor was it showing that the seller was unable to procure and submit a proper abstract. It did not even suggest, much less point out, omissions or mistakes made in the instrument called an abstract. Where the right of rescission is expressly limited, as here, to defects of title that the seller either will not or cannot on request correct, it is not easy to perceive how the omission in the first instance to furnish all the means of ascertainment of title was a sufficient warrant for the exercise of the reserved right of rescission.

The only other right expressly reserved to the purchasers to rescind is found in the following portion of the contract:

"And it is mutually agreed between the parties that, if the said first party shall be unable to procure the transfer of the concessions as above stated, then and in that event the party of the second part shall have the right, at their election, signified in writing, to rescind this contract; and, in such event, the down payment of fifteen thousand dollars provided for hereunder, with the accumulated interest thereon, shall be returned to the party of the second part, and both of the parties hereto shall be relieved from further obligations under this contract."

It will be noticed that this right to rescind is limited to inability "to procure the transfer of the concessions as above stated." The words "as above stated" required the seller "to arrange an agreement with the national government of Mexico for the transfer of the concessions." The complaint made in the letter of July 14, 1902, in regard to the assignment of concessions, was that it "did not comply with the terms of the aforesaid contract." Here again is a failure to specify. Nothing like inability in Stafford to procure transfer is suggested. The most that can be said is that the parties differed in opinion as to the form of the agreement.

It is true that Stafford had agreed in the sixth paragraph of the contract to arrange an agreement on or before the 1st day of July, 1902, with the Mexican government for transfer of the concessions; but it is not claimed that the time thus stated was made of the essence of the contract. There was no such limitation concerning the furnishing of a deed conveying the land. The concession could be of no possible advantage unless title to the land could be conveyed. Indeed, it is provided in the eighth paragraph of the contract that the purchasers should secure the right to hold lands in Mexico and be ready "to accept a conveyance of said lands and concessions from the party

of the first part when he is in a position to make same under the terms of the contract." The plain import of this is that the delivery of the conveyance and of the transfer should be concurrent acts.

Moreover, it appears in a letter of earlier date (May 31, 1902) from McPherson to Stafford that Stafford had on the 21st of that month notified Carter and Ryan "to be in the City of Mexico on June 15th prepared to receive the deed and concessions as provided in your contract of January 4 with them." But McPherson thought this unnecessary, and requested completed abstracts to be submitted to him, explaining that their attorneys would require 30 days, and "possibly much longer," to look into the title.

It is worthy of notice, too, that just five days prior to the date of the Ryan letter demanding return of the deposit, counsel of the purchasers, to whom the papers had been referred, had in a letter to McPherson (dated July 9th) advised him that they had examined all the papers turned over to them "relating to the title," and that there were no abstracts of title among them, but that there was a report of certain named Mexican counsel concerning the title. Nothing, however, is said about any paper relating to the concessions. The letter concluded thus:

"It will be necessary for Mr. Stafford to furnish abstracts of title as provided in paragraph nine of the agreement entered into January 4, 1902. Until this is done, no examination can be made of the title."

The inference to be drawn from that letter is that there was reason to call for abstracts of title, but there is nothing to suggest rescission of the contract.

The letters cannot be misunderstood. The purchasers did not observe the contract when they demanded return of the $15,000. Then, upon Stafford's request of McPherson of July 19th to tell him frankly what his position was, he was told by McPherson's answer of July 21st that the Ryan letter "is final." Plainly this evidence did not even tend to prove the breach alleged against Stafford, and the claim for damages based upon any such breach was rightly denied for that reason. Sprague v. Booth, [1909] A. C. 576. Indeed, if any breach was shown, it was committed by Carter and Ryan, and not by Stafford; and in view of the action taken by Stafford in response to the final demand made for the return of the deposit, the action of the cattle company would seem to have been altogether misconceived. At the dates of the Ryan and McPherson letters, the contract was executory. Insistence upon return of the deposit, made in anticipation of the time of performance, was totally inconsistent with further progress under the contract. It was tantamount to a distinct refusal to perform. Stafford was entitled to treat the contract as renounced by the purchasers. Weber v. Grand Lodge of Kentucky, F. & A. M., 169 Fed. 522, 533, 95 C. C. A. 20; Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953; Hockster v. De La Tour, 2 El. & Bl. 678; In re Neff, 157 Fed. 57, 60, 84 C. C. A. 561. Whether Stafford could also rightfully, according to his avowed purpose, retain the $15,000 is another matter.

We have not found it necessary to consider the real character of the instrument called an abstract of title. The same is true as to the form

of agreement concerning transfer of the concessions. Nor have we thought it important to determine whether the contract required the deed of conveyance to contain the name of Stafford as grantor, instead of the Palomas Land & Cattle Company, the apparent purchaser at foreclosure sale. The points urged touching the rejection of evidence do not seem to us to have been relevant to the case as it stood after the breach was shown. After the evidence above considered had been presented at the trial, the court below asked counsel for plaintiff whether he intended by his "future testimony to contradict the testimony" he had "already offered," to which counsel answered: "I certainly do not." We think this answer was correct, for we have found no evidence that would tend to warrant the demand and insistence made to return the deposit or to show that the demand was retracted. Hence the action of the purchasers seems to us to have been none the less a breach because of anything found in the rejected evidence. We hardly need say that plaintiff is bound by the acts of its assignors. The assignments made to it by Carter and Ryan did not occur until 1905, a period of more than three years after the contract had been repudiated.

But, without stating upon what theory recovery of the deposit could be had in this action, it is urged that Stafford cannot have the land and the deposit too. This is based upon a similar statement made by Baron Parke in Laird v. Pim, 7 M. & W. 472, 477. But that case did not present the question with which we are confronted. There the vendor, not the vendees, brought the action. The suit was to recover the purchase price and the interest, without tender of any deed of conveyance. Recovery was allowed for only the interest and the value of some clay which the purchasers had removed from the land. The remark of Baron Parke was made in comment upon the claim that the vendor was entitled to recover the principal of the purchase price, as well as the interest, although title to the land had not passed or even been tendered.

The difficulty in the present action is that the right of recovery of the $15,000 is based on an express contractual promise to return the money and interest. This promise, upon the hypothesis of the present action, was made operative through the purchasers' rightful exercise of the reserved privilege of rescinding in consequence of a breach of Stafford. But, when it is found that Carter and Ryan committed the breach, no contractual promise to return the money with interest can be said to exist.

The effect then of plaintiff's claim in argument is to change the action from an affirmance of the contract to one in disaffirmance of it. This would convert the action into one based solely upon a constructive contract, and consequently upon a promise not made by defendants but imposed by law, or by natural equity, to prevent Stafford from "enriching himself unjustly at the expense of" his vendees. Keener on Quasi Contracts, 16, 24; Hertzog v. Hertzog, 29 Pa. 465; Railway Co. v. Gaffney, 65 Ohio St. 104, 115, 61 N. E. 152; People ex rel. Dusenbery v. Speir, 77 N. Y. 144, 150, 151; or, as said by Judge Lurton in Michigan Yacht & Power Co. v. Busch, 143 Fed. 929, 934, 75 C. C. A. 109 (accordant with Judge Severens in Cherry Valley Iron Works v. Florence Iron River Co., 64 Fed. 569, 574, 12 C. C. A. 306):

"If the defendants have obtained money which ex æquo et bono they ought not to withhold from plaintiff, they should refund, and the law implies a promise to that effect."

It is manifest that when the court below found that plaintiff, instead of defendants, was chargeable with breach of the contract, there was no way to obtain relief as to the deposit unless it could be secured through some form of amendment. But whether a complete change in cause of action was permissible through amendment cannot be considered. No suggestion in this regard has been made by counsel, and the case was brought and purposely tried below on the hypothesis of express contract and its breach. No request was made at the trial to amend or change the form of action, and the court heard and disposed of the case in the original form. Argument, therefore, in support of a claim based upon another and different scheme of action, is unavailing. L. & N. R. R. Co. v. Womack (C. C. A., 6th Circuit) 173 Fed. 752, 97 C. C. A. 559. Whatever rights plaintiff may have respecting the deposit, they cannot be determined in this action.

Hence we are bound to overrule the assignments of error, and affirm the judgment