## EDWARD HINES LUMBER CO. v. ALLEY et al.

(Circuit Court of Appeals, Sixth Circuit. April 14, 1896.)

### No. 330.

1. Contracts—Interpretation—Breach.

Plaintiffs, manufacturers of lumber, made a written proposal to sell to defendants their product for the season of 1893, in which they stated: "We propose to sell you all of our cut; * * * said lumber to remain in cross-pile at least 60 days, then load on cars, * * * for the sum of $8.50 per M. feet. * * * Terms of payment to be as follows: When lumber is in cross-pile 60 days, you are either to settle for above lumber by 60-day paper or 2 per cent. off for cash. * * *" This proposal was accepted by defendants. Some months later plaintiffs wrote defendants, inclosing a statement of lumber sold, saying that the same had been cut and cross-piled for 90 days, and requesting a settlement. In fact only a part of the lumber had been cross-piled as much as 60 days. The defendants replied to plaintiffs' letter by saying that they had long since given up the idea that plaintiffs were to cut lumber for them, giving as their reason that they understood plaintiffs had had doubts of their solvency. They mentioned the date of placing the order, and that they would naturally have expected to take some of the lumber in 60 days, said that they could not then perform the contract, and suggested that plaintiffs should dispose of it elsewhere. Plaintiffs wrote again, insisting on the contract, and defendants replied by an obscure claim of a difference in the construction of the contract and refusing to do anything further. Plaintiffs sold the lumber at the market price, which had fallen below the contract price, and sued defendants for the difference. *Held,* that defendants were bound to take the lumber by installments, when it had remained 60 days in cross-pile, and, by refusing to do so, when called upon and when any part of it had so remained for 60 days, committed a breach of the contract which entitled plaintiffs to treat it as at an end.

2. SAME—MISLEADING STATEMENTS.

*Held*, further, that it was properly left to the jury to determine whether the overstatement in plaintiffs' first letter as to the time that the lumber had remained in cross-pile was made in order to mislead the defendants as to the amount due, and whether the defendants had actually been misled to their prejudice by such statement, failing which, such statement would be immaterial.

In Error to the Circuit Court of the United States for the Western District of Michigan.

The defendants in error, co-partners under the firm name of C. G. Alley & Co., were engaged in the manufacture of lumber at Whitehall, Mich. The plaintiff in error, the Edward Hines Lumber Company, is a corporation engaged in buying and selling lumber, whose principal office is at Chicago, Ill. On the 13th of April, 1893, the defendants in error made a proposal for a contract to sell to the plaintiff in error all their cut hemlock lumber for the season of 1893, which proposal was accepted by plaintiff in error. The material part of this contract was in these words:

We propose to sell you all of our cut of hemlock for the season of 1893, estimated to be about 1300 M. feet, more or less, to be cut in such sizes as you may direct as far as the logs will make to advantage, and grade the same as No. 1 hemlock; sort each length and width separate, and cross pile the same; said lumber to remain in cross-pile at least sixty days; then load on cars such sizes as you may direct, for the sum of $8.50 per M. feet for ten foot and over in length, and we will agree to cut all the ten foot into 2x4. Terms of payment to be as follows: When lumber is in cross-pile sixty days you are either to settle for above lumber by sixty-day paper, or two per cent. off for cash, you to have the privilege of leaving the lumber there until April, 1894.

On August 25, 1893, the defendants in error wrote the following letter, which was received by the Edward Hines Lumber Company:

Whitehall, Mich., Aug. 25, 1893.

Edward Hines Lumber Co., Chicago, Ill.—Gentlemen: Inclosed find statement of lumber sold to you. This lumber has now been cut and cross-piled on dock for ninety days. Our contract with you was that after lumber was on dock sixty days it was either to be paid for cash, less two per cent., or notes given for sixty days. If you cannot send us the cash, will you make three notes of $2,000 each, running 30, 60, and 90 days? We have expected your Mr. Baker to be here before this, to look over the lumber. Should you want any changes in the cutting, please inform us. Let us hear from you by return mail.

Respectfully yours,		C. G. Alley & Co.

The statement referred to in the letter showed that 716,297 feet of lumber had been cut and cross-piled. The statement in the letter that this lumber "has now been cut and cross-piled on dock for ninety days" was in large part erroneous, only a little over one-third of the same having been in cross-pile for as much as 60 days. Some of it had been cut and piled in May, some in June, some in July, and some of it in August. In reply to this notification, the plaintiff in error answered, by letter dated September 1, 1893, in the following words:

Chicago, Ill., Sept. 1, 1893.

C. G. Alley & Co., Whitehall, Mich.—Dear Sirs: Referring to yours of 25th ult., we have long since given up the idea that you were to cut the lumber for us, and we understand that you had some doubts as regards our re-

sponsibility, and for this reason concluded that you would hold the lumber; hence have not made calculations for taking same, and we cannot now do so. This order was placed in April, and we would naturally look to taking some of it at the end of 60 days. Five months have now elapsed. We cannot at all comply with the terms of the contract at the present time, so we trust you will have no inconvenience in disposing of it in small quantities elsewhere, where you can realize as you wish to realize on it.

Yours,          Edward Hines Lumber Co.

To this Alley & Co., under date of September 5, 1893, replied as follows:

Whitehall. Mich., Sept. 5, 1893.

Edward Hines Lumber Co., Chicago, Ill.—Dear Sirs: We are in receipt of yours of 1st inst. Whatever doubts we may have had at any time as to your financial responsibility, we have never had any doubts as to our obligations under the contract, and have regarded it as in full force at all times since it was made. We still expect you, as an honorable concern. to perform on your part, and we again ask you to accept the lumber already cross-piled, as per statement made, and remit us your paper therefor. If you prefer, we will sell for your account for the best price we can get upon your assurance that you will make good any deficit between the prices obtained and the contract price. Please advise us promptly of your decision.

Very truly yours,       C. G. Alley & Co.,
               Per J. H. Williams.

Upon receipt of the last-mentioned letter the plaintiff in error, under date of September 11, 1893, replied as follows:

Chicago, Ills., Sept. 11, 1893.

C. G. Alley & Co., Whitehall, Mich.—Dear Sirs: Replying to yours of the 5th inst., we must beg to differ with you as regards terms of contract. During the past terrible times we do not think any concern here has aimed to act any more honorable than we have, but we do not propose to be imposed upon as in your case your circumstances of the matter point strongly to. We do not think that it entirely lays with you as regards to allow the matter run along in the way you have, and when you feel it suits your convenience to enact certain parts of the contract for us to have nothing to say but to comply with your request. We do not wish to presume to advise you as regards what you wish to do in the matter, as we have all we can do to take care of our own affairs.

Yours, etc.,         Edward Hines Lumber Co.

No further communication took place between the parties prior to the beginning of this suit. Defendants in error continued the manufacture of the lumber, and completed the manufacture of the cut of the season of 1893 on October 12, 1893. The last of it was cross-piled on the 14th day of October, 1893. On the 28th of October, 1893, the defendants in error sold all the lumber so manufactured under their contract to C. E. & M. B. Covell, of Whitehall, Mich., at $6.50 per 1,000 feet, on board cars. Between the date of the contract for the sale of this lumber to the plaintiff in error and the sale to the Messrs. Covell there was a great depreciation in the value of lumber of that class. This action was begun in March, 1894, and was a suit by the defendants in error against the plaintiff in error for the damages sustained by defendants in error for a breach of the contract to take and pay for the lumber thus sold under the contract heretofore set out. There was a jury, and verdict against the plaintiff in error, and judgment rendered thereon, from which this writ of error has been sued out.

Bunker & Carpenter, for plaintiff in error.

Smith, Nims, Hoyt & Erwin, for defendants in error.

Before TAFT and LURTON, Circuit Judges, and HAMMOND, J.

LURTON, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

The contention of the plaintiff in error is that, under the contract by which it bought the season's cut of hemlock lumber, it was not obliged to take any part of the lumber or make any payment until the entire season's cut had been in cross-pile for 60 days. The trial judge was of opinion, and so instructed the jury, that the plaintiff in error was required to take the lumber in installments, and that, when any considerable quantity of lumber had been cut and cross-piled for a period of 60 days, the plaintiff in error was required to accept such lumber, and either pay for it in notes or in money at a discount of 2 per cent. We agree in opinion with the trial judge as to the proper construction of this contract. Under the first paragraph it was clearly contemplated that the lumber should remain cross-piled for at least 60 days before it should be deliverable. When sorted and piled for the requisite time, the sellers were to load on cars such sizes as the buyer might direct. The second paragraph deals with the question of payment by providing that "when lumber is in cross-pile sixty days you are either to settle for above lumber by sixty-day paper, or two per cent. for cash, you to have the privilege of leaving the lumber there until April, 1894." The words "above lumber," occurring in the paragraph concerning payment, do. not refer, as contended, to the whole cut of lumber for the season of 1893, but to the lumber which had been cross-piled for sixty days. This was the construction placed on the contract by both parties, as indicated by the letters of August 25th and September 1st, heretofore set out. A construction placed by both parties upon a contract so worded as to reasonably admit of such construction, is entitled to consideration in subsequent controversies as to the proper interpretation of the agreement. The contention of plaintiff in error is that the letter of September 1, 1893, does not, when properly construed, establish anything more than an unwillingness, due to a present inability, to comply at that time with the demand of a performance, and that defendants in error afterwards demanded compliance, and thereby indicated that they did not understand that the agreement had been unequivocally repudiated. Upon this interpretation of the correspondence it is urged that defendants in error themselves breached the contract by disposing of the lumber contracted to plaintiff in error before there had been any positive refusal of performance by plaintiff in error. If the conduct or assertions before time of performance of one of the parties to an executory contract is relied upon as a repudiation of the contract, and as justifying an action as for a breach of the contract, there must be shown a distinct and unequivocal refusal to perform, treated and relied upon as an absolute repudiation by the other party to the contract. The rule in respect of such an anticipatory breach is that:

"A mere assertion that the party will be unable or will refuse to perform his contract is not sufficient. It must be a distinct and unequivocal, absolute refusal to perform the promise, and must be treated and acted upon as such by the party to whom the promise was made, for if he afterwards continue to urge or demand compliance with the contract, it is plain he does not understand it to be at an end." Benj. Sales, § 860; Smoot's Case. 15 Wall. 36; Dingley v. Oler, 117 U. S. 490, 6 Sup. Ct. 850.

The circuit court instructed the jury that as a matter of law the plaintiff in error, by its letter of September 1st, had renounced the contract, and had refused performance absolutely and unconditionally, and had, therefore, breached their agreement to receive, not only the installment it was asked to receive at the time, but had committed a breach of the entire contract. This is assigned as error.

We cannot agree to the interpretation of the correspondence upon which this contention is based. If, as we have already decided, this lumber was deliverable in installments and payment was due for each installment of lumber which had been cross-piled for 60 days, then the defendants in error had a right to demand that the lumber which on the 25th of August, 1893, had been cross-piled for 60 days or over should be received and settled for, and it was the duty of plaintiff in error to accept and pay for the lumber thus deliverable under the agreement. This they distinctly refused to do by their letter of September 1st, heretofore set out. It is not a case of reliance upon assertions in advance of the time of performance, as in Smoot's Case, or in Dingley v. Oler, supra. The defendants in error demanded performance at a time when they had a right to demand performance, and a refusal to then perform was a breach of the agreement. No other reasonable construction can be put upon the letter of September 1st, in reply to the demand of the defendants. The refusal is neither put upon the ground that it was not obliged to take and pay for the lumber in installments, nor upon the ground that the lumber alleged to have been cross-piled for 90 days had not in fact been cross-piled for that time, or even for 60 days. Upon the contrary, that letter distinctly states that "we have long since given up the idea that you were to cut the lumber for us," and adds, "This order was placed in April, and we would naturally look to take some of it at the end of sixty days." It was clearly intended as a distinct and unequivocal notice that the plaintiff in error did not regard the contract as in force, for the reason that defendants in error had at one time entertained some doubt as to the responsibility of the plaintiff in error. The letter of September 5, 1893, from defendants in error, does not indicate that they did not understand that plaintiff in error had distinctly refused to comply with its promise, but was an effort to remove the ground upon which that refusal had been based, and contained a repetition of the former demand for payment. This effort to induce a recantation came to nothing. The response elicited is little more than an obscure intimation of a difference as to the proper construction of the contract, and must be regarded as a reaffirmance of the distinct and unequivocal refusal to comply contained in its former letter. There was

no error in the interpretation placed on this correspondence by the trial judge.

There was evidence tending to show that the statement in the letter of defendants in error bearing date August 25, 1893, that the lumber shown by the accompanying statement had been cut and cross-piled on the dock for 90 days, was in part untrue, and that in fact the larger portion of the lumber then on the dock in cross-piles had been thus piled for less than 60 days. It was insisted below, and is now here urged, that that misrepresentation was intended to deceive and mislead plaintiff in error and to obtain from it a larger payment than it was obliged to make under the contract. Upon this point the trial judge instructed the jury as follows:

"I instruct you that if you find from the evidence that Mr. Williams' [a member of the defendant firm, who wrote the letter of August 25th] representations upon the subject as to the cross-piling of that lumber were simply given out in a heedless and inadvertent way without any real purpose or intention to mislead, then they in no wise affect the conclusions to be drawn from the evidence that this letter was sent. If, on the other hand, you find that this statement was an intentional misstatement, and was designed to overreach the defendants, and induce them to part with more money than the plaintiffs were entitled to, and you are satisfied that it did mislead the defendants into supposing that there was more lumber on hand, ready for delivery, then there was, and that that fact influenced them in their action in refusing to go on with the contract, I charge you that the plaintiffs in this case cannot recover, because there has not been any breach of the contract. If, notwithstanding what I have said to you, you should still find from the evidence in the case that this lumber was substantially ready for delivery, and that it was in the main sufficient for the terms of the contract, and according to their requirement, whether there was much or little sawed out and remaining in cross-pile for 60 days, and that the defendant intended not to go on with the contract, but to repudiate it, whatever may be the plaintiff's purpose in making the statement, it would not have the effect of misleading anybody. In other words, in order that any misstatement should prejudice or legally injure, the misstatement must have been made with a dishonest purpose, and be followed by injury to the party to whom the misrepresentation was addressed; but, if he had not been influenced by it, he has not been injured by it. * * * If you are clearly satisfied that it did not at all influence the defendant's conduct in the premises, then it is immaterial; but if there were intentional false statements about it, you should be clearly satisfied before you should disregard the consequences of it upon the assumption that it did not influence the defendant; you should be clearly satisfied that it was so, and that the defendant had no intention to go on with the contract, and would not have done so whether there was anything of that sort in the plaintiff's letter to them or not."

This charge fairly submitted to the jury the question of the intent with which the overstatement of the letter of August 25th had been made, as well as its effect and influence upon the conduct of the plaintiff in error in refusing to go on with the contract. The evidence strongly tended to show that the plaintiff in error had no intention to abide by and perform this contract, and that this intention was due not to any misleading by reason of the letter of August 25th, but to the financial condition of the country which then existed, and to the decline in the value of lumber of this class between the date of this contract and the date of this refusal. There was no affirmative error in the charge as given, and no request was made for any additional charge upon this aspect of the case.

On cross-examination, Mr. Williams, one of the plaintiffs below, was asked if he had not been making inquiries to ascertain whether it would be safe or not to allow the Edward Hines Lumber Company to have the lumber sold them. This was objected to as irrelevant and immaterial. The court thereupon asked counsel for the plaintiff in error, "Do you intend to prove that any communication was had between the parties on that subject?" to which it was replied, "Not directly." The court then asked, "What effect do you think it would have?" to which counsel replied, "No effect, really, affecting the rights of the parties under the contract, but simply in explanation of their correspondence." Thereupon the court ruled the question out as immaterial and irrelevant. There was no error in this.

After the testimony had been concluded the counsel for defendant moved the court to direct a verdict in favor of the defendant, on the ground that under the evidence it had not committed a breach of the contract sued upon, and that the plaintiffs had themselves broken the contract. This motion was overruled, in consequence of the construction which the court then announced that it would put upon the contract. Thereupon counsel for plaintiffs in error moved the court "to allow them to open the case, and show that at the time the contract was made the defendants expressly declined to make any such contract as the court holds was included in it, to make payments from time to time." This was declined upon the ground that such evidence would violate the rule that all preliminary negotiations are presumed to have been merged in the written contract. The action of the court in overruling this motion is now assigned as error. Aside from the fact that this motion came after the conclusion of all the evidence, and after the motion for a peremptory instruction had been argued and overruled by the court, we are of opinion that the line of testimony which the plaintiff in error asked leave to introduce was clearly in conflict with the rule excluding evidence as to the preliminary agreements and negotiations between the parties resulting in a written contract. Upon the whole case, we are of opinion that none of the errors assigned are well taken, and that the judgment of the lower court should be, and accordingly is, affirmed.