═══════════

### In re NEFF.

(Circuit Court of Appeals, Sixth Circuit. November 20, 1907.)

Nos. 1,671, 1,672, 1,673.

1. FRAUDS, STATUTE OF—CONTRACTS WITHIN STATUTE—ORAL ACCEPTANCE OF WRITTEN OFFER.

A promissory note by which the makers promised to pay a stated sum to the payee on a future date on surrender of certain shares of stock of a corporation, accepted by the payee, is a written contract to take and pay for such shares, and is not within the statute of frauds.

2. BANKRUPTCY—PROVABLE DEBTS—DEBTS OWING AT TIME OF BANKRUPTCY.

That a claim arises as a consequence of bankruptcy is sufficient to render it provable as a fixed liability absolutely owing at the date of the filing of the petition, within the meaning of Bankr. Act 1898, § 63a (1), c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3447].

3. SAME—BANKRUPTCY AS ANTICIPATORY BREACH OF EXECUTORY CONTRACT.

Bankruptcy is such an anticipatory breach of a contract to take and pay for stock of a corporation at a stated price and time, which time was subsequent to the bankruptcy, that a claim for damages for the breach is a provable debt.

Appeal from the District Court of the United States for the Southern District of Ohio.

The following is the opinion of the District Court by Thompson, District Judge:

These petitions present the same questions, and will be considered together.

The petitioners, as creditors, proved claims against the bankrupt, which were allowed but afterwards were expunged upon the ground that they were not provable. They were expunged upon the petitions of the trustee, which were submitted to the referee upon an agreed statement of facts which reads as follows:

"We agree that the makers of the promissory note or contract filed as the basis of this claim were promoters of the Avery Caldwell Co.—that in order to induce the claimant to purchase or subscribe for shares of stock in said company they agreed to execute and deliver to claimant the note or contract filed—that claimant paid the full sum of $——— and received therefor the ——— shares of stock filed with his claim and the said note or contract— that at and before the filing of the petition in bankruptcy the ——— Co. was insolvent."

The following are copies of the promissory notes or contracts:

"$2500.00                                        Bellaire, Ohio, April 14th, 1905.

"April 15th, 1908, after date, I, we or either of us promise to pay to the order of Allen Chaney Twenty-five Hundred Dollars at The Office of The Avery Caldwell Mnfg. Co. upon surrender of 2500 shares of Preferred Stock of The Avery Caldwell Mnfg. Co. Interest at 7 per cent. Value received.

"J. Brent Harding,
"Theodore Neff,
"Anson C. Lamb."

"$2500.00                                          Bellaire, Ohio, Feb. 7, 1905.

"Two years after date I, we, or either of us promise to pay to the order of Miss Emily M. Nichols Twenty-five Hundred and no-100 Dollars at The Office of The Avery Caldwell Mnfg. Co., upon surrender of Certificate No. 38 for 2500 shares of Preferred Stock of said Company. Interest at 7 per cent per annum. Value received.                                    J. Brent Harding,
"Theodore Neff."

"$1000                                          Bellaire, Ohio, January 20, 1905.

"Two years after date I, we, or either of us promise to pay to the order of J. D. Lyle One Thousand Dollars at The Dollar Savings Bank, Bellaire, upon surrender of 1000 shares of stock of The Federal Casket Co. Interest 7 per cent per annum.                                              J. Brent Harding,
"Theodore Neff,
"Chas. P. Lee,
"Anson C. Lamb."

"$1500.00                                          Bellaire, Ohio, April 1, 1905.

"On demand April 1, 1907, after date we promise to pay to the order of James D. Lyle Fifteen Hundred Dollars at the office of The Avery Caldwell Mnfg. Co., Bellaire, Ohio, upon surrender of Certificate No. 61 for 1500 shares of The Preferred Stock of The Avery Caldwell Mnfg. Co. 7 per cent Dividend guaranteed from April 1, 1905, to 1907. Value received.

"J. Brent Harding,
"Theodore Neff."

Before the filing of the petition in bankruptcy herein, the two corporations failed and their stock became and is now utterly worthless. Neff was adjudged a bankrupt January 20, 1906, and the claimants proved their claims within 30 days thereafter. The question presented is, were these claims provable?

The agreed statement of facts is meager and leaves much to conjecture. The circumstances suggest different yet plausible views of the character of these transactions, but the best supported is that the stock was subscribed for upon the agreement of the promoters to redeem it. It may be that the promoters needed the use of the money, and that the names of the claimants

added to the list of stockholders, would aid their enterprise, and that in consideration therefor they agreed to redeem it. Those agreements were evidenced by writings, upon which these claims were founded, which fixed the times and places for the payment of the prices agreed upon and for the delivery or surrender of the stock. In substance, if not in form, these transactions may have been loans of money at 7 per cent., secured by collateral (the stock) which, upon payment of the loans, was to be surrendered or delivered up with the notes. If so, then these claims represent fixed liabilities, evidenced by instruments in writing, absolutely owing at the time of the filing of the petition in bankruptcy, although not then payable, and are provable claims against the estate of the bankrupt, under section 63a (1) of the Bankrupt Act of July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3447].

If, however, these instruments be regarded as contracts to purchase the stock at the prices and times and upon the terms specified (and one or the other of these two views must prevail), the adjudication in bankruptcy disabled Neff from performing these contracts and was equivalent to an anticipatory breach thereof, and, coincident therewith, rights of action arose in favor of the claimants to enforce these contracts, and the claim became provable under section 63a (4) and the proof and filing thereof, accompanied by the stock and notes, was a sufficient delivery or surrender thereof in compliance with the requirement of the contracts. Rochester v. Delatur, 2 E. & B. 678; Frost v. Knight, 7 Exch. 111. Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953; In re Swift, 7 Am. Bankr. Rep. 374, 112 Fed. 315, 50 C. C. A. 264; In re Pettingill & Co. (D. C.) 14 Am. Bankr. Rep. 728, 137 Fed. 143; Watson v. Merrill, 14 Am. Bankr. Rep. 454, 136 Fed. 359, 69 C. C. A. 185, 69 L. R. A. 719; Dunbar v. Dunbar, 190 U. S. 340, 23 Sup. Ct. 757, 47 L. Ed. 1084.

The contracts were in writing and signed by the parties to be charged, and were delivered to and accepted by the claimants, which was a sufficient compliance with the statute of frauds, and takes the case out of the operation thereof. Thayer v. Luce, 22 Ohio St. 62; Himrod Furnace Co. v. Cleveland, Id. 451; Brown, Stat. Frauds, § 345c.

The findings and orders of the referee will be reversed, and the claims allowed.

E. E. Clevenger and Cook Danford, for appellants.

A. H. Mitchell, for appellees.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge. These three appeals have been heard together, as they involve the provability of a number of claims against the bankrupt of like character. In tenor and substance the contracts are alike. That presented by Emily M. Nichols is an example and is as follows:

"$2,500.00                                    Bellaire, Ohio, Feb. 7, 1905.

"Two years after date, I, we, or either of us promise to pay to the order of Miss Emily M. Nichols twenty-five hundred and no 100 dollars at the office of the Avery-Caldwell Mfg. Co., upon surrender of certificate No. 38 for 2,500 shares of preferred stock of said company, value received interest 7 per cent per annum.                                    J. Brent Harding.
                                              "Theodore Neff."

Some of these contracts related to the stock of a manufacturing corporation, known as the Avery-Caldwell Company, and others to the stock of the Federal Casket Company. It was agreed, as a fact, that the contract set out and others of like character were made by the persons signing the same as promoters, and to induce sales of the stock of the corporations named, and that in consideration of this agreement the claimants became subscribers to the stock of said com-

panies, paying therefor the amount named in each contract, and received therefor the shares of stock mentioned. It was also agreed that both of these corporations were "insolvent" before the bankruptcy of said Neff, and that this stock was of no value. The stock certificates were filed as part of the proof in each case and tendered to the trustee. The contracts are plainly agreements to purchase the shares of stock named at the time and price stated. They rest upon a sufficient consideration, and are written agreements to take and pay for the shares named and signed by the parties to be charged and delivered to and accepted by the promisees. There is, therefore, nothing in the objection as to the contracts being invalid under the statute of frauds because not signed by claimants also. Thayer v. Luce, 22 Ohio St. 62; Himrod Furnace Co. v. Cleveland, 22 Ohio St. 451; Lee v. Cherry, 85 Tenn. 707, 4 S. W. 835, 4 Am. St. Rep. 800; Brown's Statute of Frauds, § 345c. The status of a claim must depend upon its provability at the time the bankrupt petition was filed. At that time it must come within the definition of section 63 of the bankrupt act; it cannot be benefited by its status at a later date. The defense is that these claims were not "fixed liabilities," "absolutely owing" at the time of the filing of the petition against the bankrupt. This is based upon the fact that the liability of the bankrupt is made dependent upon the surrender of the stock certificate at a date which had not then arrived, and that it was optional with the promisees to surrender or keep the stock until that time, and that the liability of the promisor was undetermined and contingent until such surrender at the time named.

That the promisor might refuse performance until the time named is true. But if, before the time of performance, one absolutely repudiate liability and disavow unequivocally any purpose to perform at any time, the other party may treat such repudiation, at his election, as a breach of the agreement and sue for his damages. This is the rule as settled in Hochster v. De La Tour, 2 El. & Bl. 678, and approved by the Supreme Court in Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953, and by this court in Foss Brewing Co. v. Bullock, 16 U. S. App. 311, 59 Fed. 83, 8 C. C. A. 14, and Edward Hines Lumber Co. v. Alley, 43 U. S. App. 169, 73 Fed. 603, 19 C. C. A. 599; McBath v. Jones Cotton Co., 149 Fed. 383, 79 C. C. A. 203; Michigan Yacht Co. v. Busch, 143 Fed. 939, 75 C. C. A. 109. So, if one of the parties absolutely disables himself from performing the contract by putting performance out of his power, the other party may treat that as a repudiation and bring his action to recover damages then or wait the time of performance at his election. This aspect of the question of an anticipatory breach is well put by Fuller, Chief Justice, in Roehm v. Horst, cited above, when he says:

"It is not disputed that if one party to a contract has destroyed the subject-matter, or disabled himself so as to make performance impossible, his conduct is equivalent to a breach of the contract, although the time of performance has not arrived; and also that if a contract provides for a series of acts, and actual default is made in the performance of one of them, ac-

companied by a refusal to perform the rest, the other party need not perform, but may treat the refusal as a breach of the entire contract, and recover accordingly."

In Lovell v. St. Louis Life Ins. Co., 111 U. S. 264, 274, 4 Sup. Ct. 390, 395, 28 L. Ed. 423, the company had failed and transferred its business to another company. The court held that this authorized one insured to treat the contract as at an end and to sue to recover back premiums paid although the time of performance had not arrived. Mr. Justice Bradley, for the court, said:

"Our third conclusion is that, as the old company totally abandoned the performance of its contract with the complainant by transferring all its assets and obligations to the new company, and as the contract is executory in nature, the complainant had a right to consider it as terminated by the act of the company, and to demand what was justly due to him in that exigency. Of this we think there can be no doubt. Where one party to an executory contract prevents the performance of it, or puts it out of his own power to perform it, the other party may regard it as terminated and demand whatever damage he has sustained thereby. We had occasion to examine this subject in the recent case of United States v. Behan, 110 U. S. 339, 4 Sup. Ct. 81, 28 L. Ed. 168, to which we refer."

See, also, Carr v. Hamilton, 129 U. S. 669, 9 Sup. Ct. 295, 32 L. Ed. 669.

Bankruptcy is a complete disablement from performance and the equivalent of an out and out repudiation, subject only to the right of the trustee, at his election, to rehabilitate the contract by performance. In the case styled In re Swift, 112 Fed. 315, 50 C. C. A. 264, this consequence was considered by the Court of Appeals for the First Circuit in a very satisfactory opinion by Putnam, C. J. There the obligation of a broker to deliver certain shares of stock on demand was held to be breached by bankruptcy, and that no prior demand was essential, a right of action accruing simultaneously with the bankrupt petition, which was the act of disablement to which the adjudication related. In re Pettingill Co. (D. C.) 137 Fed. 143, 147, Judge Lowell, in a very able and discriminating opinion in which the authorities are considered in the light of the requirements for a provable debt under the present bankrupt law, reached the conclusion that:

"If the bankrupt, at the time of bankruptcy, by disenabling himself from performing the contract in question, and by repudiating its obligation, could give the proving creditor the right to maintain at once a suit in which damages could be assessed at law or in equity, then the creditor can prove in bankruptcy on the ground that bankruptcy is the equivalent of disenablement and repudiation. For the assessment of damages proceedings may be directed by the court under section 63b, Act July 1, 1898, c. 541 (30 Stat. 562, U. S. Comp. St. 1901, p. 3447)."

In that case it was held that a contract guaranteeing "the redemption" of corporate shares, three years after date of issue, was a provable claim, although the time for "redemption" had not arrived at date of bankruptcy.

It is sufficient that a claim becomes provable as a consequence of bankruptcy. The right to sue for and recover damages then accrues. As Judge Lowell puts it in Re Pettingill Co., cited above:

"In admission to proof, however, the claim need not arise before bankruptcy. nor need the contract be broken theretofore. It is sufficient for proof if the breach of contract and bankruptcy are coincident."

The creditor by offering to file his claim manifests his election to treat the contract as broken. This the court held he might do. The decree in each case is affirmed.