## WILLIAMS v. DE SOTO OIL CO.

(Circuit Court of Appeals, Eighth Circuit. March 28, 1914.)

No. 3993.

1. PRINCIPAL AND AGENT (§ 149*)—ACTS WITHOUT AUTHORITY—AGENT'S LIABILITY.

An agent is personally liable for fraudulent misrepresentations of authority, or for making a contract in which he assumes authority he knows he does not possess.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 553–555; Dec. Dig. § 149.*]

2. PRINCIPAL AND AGENT (§ 149*)—ACTS OF AGENT—LACK OF AUTHORITY—AGENT'S PERSONAL LIABILITY.

One who assumes to act for another impliedly warrants that he is authorized to do so, so that, if he in fact lacks authority, he becomes personally liable to one who deals with him in good faith in reliance on the warranty, whether the agent knows he lacks authority or honestly believes he had authority when in fact he had none.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 553–555; Dec. Dig. § 149.*]

3. BROKERS (§ 94*)—AUTHORITY TO PURCHASE MERCHANDISE—CANCELLATION OF CONTRACT.

A broker authorized to purchase cotton seed at prices to be fixed from time to time by the principal, varying according to the market, after making a contract of purchase, had no authority to agree to cancellation thereof.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 136; Dec. Dig. § 94.*]

4. FRAUDS, STATUTE OF (§ 115*)—CONTRACT OF SALE—MEMORANDUM—SIGNING.

Under the Arkansas statute of frauds the memorandum of a contract of sale of merchandise need only be signed by the party to be charged, to wit: The seller on his contract to sell, or the buyer on his contract to accept and pay for the property.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 242–250; Dec. Dig. § 115.*]

5. FRAUDS, STATUTE OF (§ 106*)—CONTRACT OF SALE—MEMORANDUM.

Defendant, purporting to act for a corporation, having sold to plaintiff 25 cars of cotton seed through a broker, executed a memorandum reciting that the same confirmed the sale to the plaintiff through the broker of 25 cars of cotton seed to be shipped during the season to plaintiff at Memphis at $11 per ton, the shipments to be made from points specified and signed by defendant, acting for the alleged seller. *Held*, that the writing was not a mere offer to sell, but was a sufficient memorandum of a completed contract under the statute of frauds.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 193, 210, 211; Dec. Dig. § 106.*]

6. SALES (§ 374*)—CONTRACT—BREACH—ACTION FOR DAMAGES.

Where defendant, after making a contract on behalf of a corporation for the sale of cotton seed to plaintiff, without authority, repudiated the contract, as did also the corporation which defendant purported to represent, and declined to proceed under it, plaintiff was entitled to treat such repudiation as a breach of the contract and sue at once for damages.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1091; Dec. Dig. § 374.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

7. SALES (§ 384*)—CONTRACT—BREACH—DAMAGES.

Where defendant finally repudiated a contract for the sale of cotton seed on a specified date, the court did not err in selecting that date in an instruction on the plaintiff's measure of damages, to wit: That plaintiff was entitled to recover the difference between the contract price and the market price on such date.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1098–1107; Dec. Dig. § 384.*]

In Error to the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Action by the De Soto Oil Company against Eugene Williams. Judgment for plaintiff, and defendant brings error. Affirmed.

H. F. Roleson, of Marianna, Ark., and W. W. Hughes, of Forrest City, Ark., for plaintiff in error.

John I. Moore, J. M. Vineyard, and W. R. Satterfield, all of Helena, Ark., for defendant in error.

Before SANBORN and CARLAND, Circuit Judges, and RINER, District Judge.

RINER, District Judge. This was an action brought in the United States Circuit Court for the Eastern Division of Arkansas by the De Soto Oil Company, defendant in error, a corporation organized under the laws of the state of Tennessee, against Eugene Williams, a citizen of the Eastern Division of the Eastern District of Arkansas, to recover damages for the breach of a contract. The complaint, after setting out the citizenship of the parties, alleged in substance:

That on the 14th day of November, 1907, Williams, the plaintiff in error, while pretending to act as the agent of the Planters' Gin & Manufacturing Company, sold to the De Soto Oil Company 25 car loads of cotton seed at the agreed price of $11 per ton, shipments to be made during the season of 1907–1908 from the stations of Bonair, Forrest City, Colt and Round Pound, in the state of Arkansas, to Memphis, Tennessee. That the sale of the 25 car loads of cotton seed was on the same day confirmed by a memorandum in writing as follows:

"Forrest City, Ark., 11-14-07.

"This confirms the sale to the De Soto Oil Company, through R. M. Nimocks, of twenty-five (25) cars of good cotton seed, to be shipped during the season to them at Memphis, at eleven dollars ($11) per ton, shipments to be made from Bonair, this point, and Colt and Round Pound.

"[Signed]     Planters' Gin & Mfg. Co.,
"By Eugene Williams."

That the De Soto Oil Company, relying upon the authority of Williams to execute the memorandum confirming the sale for and on behalf of the Planters' Gin & Manufacturing Company, repeatedly demanded the shipment of the 25 cars of seed as provided in the contract. That after the season of 1907–1908 had passed, and after the Planters' Gin & Manufacturing Company had refused to make shipment of any seed under the contract, the De Soto Oil Company brought suit against the Planters' Gin & Manufacturing Company to recover

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

damages for its failure to deliver the seed pursuant to the terms of the contract, and it then, for the first time, ascertained that Williams had no authority, either express or implied, to execute the contract and memorandum for or in behalf of the Planters' Gin & Manufacturing Company. That the De Soto Oil Company agreed to purchase the 25 cars of seed, and obligated itself to receive and pay for the same in accordance with the terms of the contract as confirmed by the memorandum in writing, and was at all times ready and willing to carry out its part of the contract. That, by reason of the failure and refusal of the Planters' Gin & Manufacturing Company to deliver the 25 cars of cotton seed as provided in the contract, the De Soto Oil Company was damaged in the sum of $3,000.

Williams answered, denying the allegations of the complaint, pleading the statute of frauds and the cancellation of the contract. A trial was had resulting in a verdict and judgment in favor of the De Soto Oil Company in the sum of $2,375.

The evidence established the following facts:

That R. M. Nimocks, a broker living at Forrest City, and acting for and on behalf of the De Soto Oil Company, on the 14th day of November, 1907, entered into a contract with Williams to buy 25 car loads of cotton seed at the agreed price of $11 per ton, to be delivered during the season of 1907–1908. That Williams made the contract and executed the memorandum confirming it in the name of the Planters' Gin & Manufacturing Company, and delivered the same to Nimocks, who at once forwarded it to the De Soto Oil Company. That a few days after the memorandum was executed Williams called on Nimocks and advised him that he desired to cancel the contract. That, in reply to Williams' request, Nimocks said it would be all right so far as he was concerned, but he was not authorized to speak for the De Soto Oil Company, and advised Williams to take the matter up with the company direct. That nothing further was done with reference to the cancellation of the contract until December 10th, when, in reply to a second letter from the De Soto Oil Company asking when shipment would begin, Williams, using the name of the Planters' Gin & Manufacturing Company, advised the De Soto Oil Company, by letter, that no shipments would be made under the contract. That Nimocks had authority to purchase oil seed for the De Soto Oil Company at prices fixed by it from time to time, but had no power to cancel such contracts, and that the price of cotton seed advanced from $11 per ton to $17 per ton during the season of 1907–1908.

The testimony further disclosed that Williams had no authority whatever to enter into a contract for the sale of cotton seed for and on behalf of the Planters' Gin & Manufacturing Company. This clearly appeared from his own testimony on cross-examination when he was asked:

"Q. Mr. Williams, you executed this contract that was offered in evidence? A. Yes, sir. Q. At that time you were secretary and treasurer of the Planters' Gin & Manufacturing Company? A. Yes, sir. Q. And executed this contract in their name, without any authority? A. I did."

[1, 2] An agent is undoubtedly personally liable in case of a fraudulent misrepresentation of authority. He is also personally liable if he has no authority and knows it, but nevertheless makes the contract as having such authority, and this for the reason that he induces the other party to enter into the contract by what amounts to a misrepresentation of a fact peculiarly within his own knowledge, and he must be considered as holding himself out as one having authority to contract, and as guaranteeing the consequences arising from any want of such authority. And the courts have also held that, when a party making a contract bona fide believes that such authority is vested in him, but as a matter of fact has no such authority, he is still personally liable upon the contract. In this last case, while it is quite true that the agent is not actuated by any fraudulent motive, nor has he made any statements which he knows to be untrue, yet it is a wrong differing only in degree from a case where he entered into a contract when he had no authority and knew it, for the effect upon a third party with whom he deals is the same. The general rule is clearly stated in 31 Cyc. 1545, as follows:

"A person who assumes to act as agent for another impliedly warrants that he has authority to do so. If, therefore, he in fact lacks authority, he renders himself personally liable to one who deals with him in good faith in reliance on the warranty, whether the agent knows that he lacks authority and nevertheless assumes to act as if he possessed it, or whether he honestly believes he had authority, when in fact he has none. The warrant of authority embraces not only the existence of the authority, but also it is sufficient to cover the contract which the agent attempts to make, and if, therefore, the agent, whether in good faith or otherwise, acts in excess of authority actually possessed, he renders himself personally liable to third persons." Dale & Banks v. Donaldson Lumber Co., 48 Ark. 188, 2 S. W. 703, 3 Am. St. Rep. 224; Lasater v. Crutchfield, 92 Ark. 535, 123 S. W. 394.

[3] The record clearly shows that Nimocks had no authority whatever to cancel this contract, and recognizing that fact he did not attempt to do so, but advised Williams to take the matter up with the De Soto Oil Company. The authority to make contracts does not necessarily carry with it the authority to cancel them. In this case Nimocks was a special agent authorized to purchase cotton seed for the De Soto Oil Company at prices to be fixed from time to time by that company; the prices varying according to the market. The rule is thus stated in 31 Cyc. 1387:

"Presumptively an agent is employed to make contracts, not to rescind or modify them, to acquire interests, not to give them up, and no power to cancel or vary an agreement is to be inferred from a general power to make it, nor has the agent any implied power to waive or give up rights or interests of his principal, nor to increase his obligation and liabilities for the benefit of third persons, unless the principal knew or approved of such modifications by the agent."

[4] The contention that the contract was invalid under the statute of frauds is, we think, without merit. In the case of a contract, such as we have before us, under the statutes of Arkansas the memorandum need be signed only by the party to be charged, which, we take it, means the vendor upon his contract to sell or the vendee, upon his contract to accept and pay for the property purchased.

Thus it is said in 29 Am. & Eng. Enc. of Law, 858:

"The weight of authority is that the statute is satisfied if the memorandum is signed by the party sought to be charged alone, or, in other words, by the party defendant in an action brought to enforce the contract, whether he be vendor or vendee."

"It very frequently happens," said the court in Lewis v. Atlas Ins. Co., 61 Mo. 534, "that contracts on their face and by their express terms appear to be obligatory on one party only; but in such cases, if it be manifest that it was the intention of the parties and the consideration upon which one party assumed an express obligation that there should be a corresponding and correlative obligation on the other party, such corresponding and correlative obligation will be implied. As, if the act to be done by the party binding himself can only be done upon a corresponding act being done or allowed by the other party, an obligation by the latter to do or allow to be done the act or thing necessary for the completion of the contract will necessarily be implied."

[5] The memorandum clearly shows that the terms of the sale had been agreed upon, and that it was executed and signed by Williams to confirm the contract of sale. The language is:

"This confirms the sale to the De Soto Oil Company through Nimocks of 25 cars of good cotton seed."

So that it cannot, we think, be said that it was a mere offer to sell, but on the contrary evidenced in writing a completed contract of sale upon which Williams, in the absence of authority to make it for and on behalf of the Planters' Gin & Manufacturing Company, in whose name he assumed to act, became personally liable for all damages resulting from the failure of that company to carry out the contract.

[6] At the conclusion of all of the evidence the court instructed the jury that Williams had by his letter of December 10, 1907, committed a breach of the contract sued upon, and that the plaintiff was entitled to recover a verdict in some amount. Under the evidence in the case we think the instruction was proper, for by his letter of December 10th Williams repudiated the contract and declined to proceed under it, and the De Soto Oil Company might well treat such repudiation as a breach of the contract and bring its suit for damages. Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953; Foss-Schneider Brewing Co. v. Bullock, 59 Fed. 83, 8 C. C. A. 14; Edward Hines Lumber Co. v. Alley, 73 Fed. 603, 19 C. C. A. 599; Mc-Bath v. Jones Cotton Co., 149 Fed. 383, 79 C. C. A. 203; Michigan Yacht & Power Co. v. Busch, 143 Fed. 929, 75 C. C. A. 109.

[7] The court instructed the jury that the measure of damages for the plaintiff would be the difference between the contract price for 25 cars of cotton seed and the fair market value of cotton seed on December 10, 1907, or within a reasonable time thereafter, at Forrest City, Ark., if such market value at that time and place was in excess of $11 per ton. It also instructed the jury that in their discretion they might allow interest at the rate of 6 per cent. from December 10, 1907, upon such amount as they found the plaintiff entitled to recover. These instructions were excepted to. No comment seems to be made upon them in the brief, except that it is said:

"The court erred in arbitrarily selecting December 10th as the date of breach of the alleged contract, and in fixing the liability at the difference in the contract price and the market value at that date."

We think the court was right, for it was upon that date that Williams repudiated the contract and declined to make any shipments of seed at all.

Our examination of the record satisfies us that the question of damages was submitted to the jury under proper instructions, and that there was ample evidence to support the verdict. It follows, therefore, that the judgment must be affirmed.

And it is so ordered.